UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PALMER KEARNY MESA
PROPERTIES, LP, a California limited
partnership; GH PALMER, INC., a
California corporation,

                              Plaintiffs,

         v.

CITY OF SAN DIEGO, a California
municipal corporation,

                              Defendant.

Case No.:  23-cv-1755-DMS-BJC

**ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS**

Pending before the Court is Defendant City of San Diego's motion to dismiss for lack of jurisdiction or for failure to state a claim.  (ECF No. 13.)  Plaintiffs challenge the validity of the City of San Diego's Inclusionary Affordable Housing Regulation, San Diego Mun. Code §§ 142.1301–14.  For the reasons that follow, the City's motion is granted.

## I.    BACKGROUND

### A. The IAHR

The City of San Diego ("the City") first adopted an inclusionary housing ordinance known as the Inclusionary Affordable Housing Regulations ("IAHR") in 2003 with the purpose of "encourag[ing] diverse and balanced neighborhoods with housing available for households of all income levels."  San Diego Mun. Code § 142.1301.  The City explained

1

that the intent behind the IAHR was to "ensure that when developing the limited supply of developable land, housing opportunities for persons of all income levels are provided." *Id.* The IAHR has been amended several times since 2003.  In its current form, the IAHR requires developers to set aside 10% of residential units in certain new developments for low-income households "at cost, including an allowance for utilities, that does not exceed 30 percent of 60 percent of median income." *Id.* § 142.1304(a).  This requirement applies to new developments of five or more units in the "coastal zone" and to new developments of ten or more units elsewhere in the City.  *Id.* § 142.1302.  The San Diego Housing Commission determines qualifications for occupancy of IAHR affordable units.  *Id.* § 142.1312.  The affordable units remain restricted for "a period of not less than 55 years" by covenants recorded in the deeds.  *Id.* §§ 142.1304(f), 142.1313.  In lieu of setting aside restricted units, the IAHR allows a developer to pay "in-lieu fees" which are "deposited into the Affordable Housing fund."  *Id.* § 142.1306(d).  The "in-lieu fees" are currently assessed at $25.00 per square foot of proposed construction.  (Compl. ¶ 68, ECF No. 1.[1])

There are three categories of exemptions from IAHR requirements:

(1) "Residential development located in the North City Future Urbanizing Area that is within Proposition A Lands of the City of San Diego or any project located in an area of the City that was previously located in the North City Future Urbanizing Area," San Diego Mun. Code § 142.1303(a);

(2) "Rehabilitation of an existing building that does not result in a net increase of dwelling units on the premises," *id.* § 142.1303(b); and

(3) "Density bonus units," *id.* § 142.1303(c), if the development meets the minimum thresholds set by California Government Code §§ 65915–18.

The City may also approve a "variance, waiver, adjustment, or reduction" on two grounds.

---

[1] "Effective July 1, 2024, the Inclusionary In Lieu Fee shall be $25.00 per square foot of *net building area* of unrestricted market-rate residential *development*. The Inclusionary In Lieu Fee shall be updated annually based on the annual increase in the Construction Costs Index (CCI) published by Engineering News Record for Los Angeles …."  San Diego Mun. Code § 142.1306(a).

*Id.* § 142.1311.  First, the City may grant a modification if the decision maker makes *all* the following findings:

> (1) Special circumstances, unique to that development, justify granting the variance, waiver, adjustment, or reduction;
> (2) The development would not be feasible without the modification;
> (3) A specific and substantial financial hardship would occur if the variance, waiver, adjustment, or reduction were not granted; and
> (4) No alternative means of compliance are available which would be more effective in attaining the purposes of this Division than the relief requested.

*Id.* § 142.1311(a) (emphasis omitted).  Second the City can grant a modification if it "makes findings that applying the requirements" of the IAHR "would take property in violation of the United States or California Constitutions."  *Id.* § 142.1311(b).

## B. Plaintiffs and the Kearny Mesa Project

The two plaintiffs in this case are residential property developers: (1) Palmer Kearny Mesa Properties, L.P., a California limited partnership doing business in San Diego County ("Palmer Kearny Mesa Properties"), (Compl. ¶ 13), and (2) GH Palmer, Inc., a California corporation doing business across California including San Diego County, (*id.* ¶ 14) (collectively, "Plaintiffs" or "Palmer").  Palmer is engaged in residential property development across San Diego County and California. (*Id.* ¶ 15.)  Relevant here, Palmer seeks to build a large mixed-use development consisting of 1,642 residential units and approximately 32,000 square feet of retail space ("Kearny Mesa Project" or "Project") located at Clairemont Mesa Boulevard, Convoy Street, and Raytheon Road, within the City of San Diego. (*Id.* ¶¶ 16–17.)  The property is in an area zoned for the kind of multi-family residential development this Project proposes and accordingly, "no further quasi-legislative or discretionary City approvals are required, and the Project is considered as a by-right proposal, subject only to further ministerial review by City Staff." (*Id.* ¶ 16.)

In December 2022, Palmer alleges it submitted a detailed plan to the City for review as part of its application for building permits. (*Id.* ¶ 74.)  The application indicated the Project should be "exempt from" the IAHR's requirement of setting aside 10% of newly

3

constructed units as affordable units or payment of in-lieu fees, but also indicated that "in the absence of any other feasible alternative or opportunity to object," Palmer would comply with the IAHR by payment of "in-lieu fees." (*Id.*)  On June 6, 2023, the City's preliminary review of the Project "disregarded Plaintiffs' claim of exemption" and indicated the Project would be "subject to the inclusionary affordable housing fee" per San Diego Mun. Code § 142.1306. (*Id.* ¶ 75.)  Palmer wrote to the City seeking clarification on its failure to acknowledge Plaintiffs' request for an exemption. (*Id.* ¶ 76.)  On August 11, 2023, the City responded in writing asking Palmer why it believed the Project qualified for an exemption.  Palmer alleges this response indicates "that compliance with [IAHR] requirements is necessary as a condition precedent to the City's issuance of building permits." (*Id.*)  With that, Plaintiffs allege they "have exhausted administrative remedies, to the extent that any such remedies are available, feasible, and not futile." (*Id.* ¶ 77.)

### C. Claims and Procedural History

The Complaint raises five claims for relief.  First, Plaintiffs raise a claim under 42 U.S.C. § 1983 alleging the IAHR effects a "taking" of private property in violation of the Fifth and Fourteenth Amendments to the United States Constitution—both facially and as applied by the City against their Project.  Plaintiffs articulate three theories of relief under the Takings Clause: (a) a per se physical taking, (b) unconstitutional conditions, and (c) a regulatory taking.  Second, Plaintiffs raise a claim under 42 U.S.C. § 1983 alleging a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  Third, Plaintiffs allege an unconstitutional taking in violation of the California Constitution, Article I, Section 19, and articulate three theories analogous to those raised under their federal takings claim.  Fourth, Plaintiffs allege a violation of their right to Due Process and Equal Protection under Article I, Section 7 of the California Constitution.  Fifth and finally, Plaintiffs allege violations of various state laws, including: (a) Proposition 26, codified at Article XIII C, Section 1(e) of the California Constitution; (b) a "fail[ure] to justify" the IAHR fees and exactions "as required by the Constitutions of the United States and the State of California"; (c) the California Mitigation Fee Act, Cal. Gov't Code §§

4

66000–06; and (d) improper calculation of costs justifying the exactions in the IAHR.

The City filed its motion to dismiss on March 3, 2024.  (Mot., ECF No. 13.)  On April 1, 2024, Plaintiffs filed their response in opposition, (Opp'n, ECF. No. 13), to which the City replied on April 22, 2024, (Reply, ECF No. 15).  The Court heard oral argument on May 17, 2024, (ECF No. 18), and took the motion under submission.

## II.   LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal of an action for lack of subject-matter jurisdiction.  "Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  Rule 12(b)(1) jurisdictional challenges can be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  The standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) governing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), apply with equal force to facial jurisdictional challenges under Rule 12(b)(1).  *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal* standard to challenge for lack of Article III standing under Rule 12(b)(1)).  Thus, the complaint must allege "sufficient factual matter, accepted as true," *Iqbal*, 556 U.S. at 678, to show a right to invoke the jurisdiction of a federal court.

In a factual challenge, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with 'competent proof' under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th

5

Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)).  The court need not accept the allegations in the complaint as true.  *Safe Air for Everyone*, 373 F.3d at 1039. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Leite*, 749 F.3d at 1121.

The City "has converted" its Rule 12(b)(1) motion "into a factual motion by presenting affidavits or other evidence" attached to the motion.  *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).  (*See* Decl. of Elise Lowe in Supp. of Def.'s Mot. to Dismiss ("Lowe Decl."), ECF No. 13-2; Decl. of Lee H. Roistacher in Supp. of Def.'s Mot. to Dismiss ("Roistacher Decl."), ECF No. 13-3.)   Accordingly, the evidentiary standard governing summary judgment applies, *Leite*, 749 F.3d at 1121, and "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing" constitutional ripeness," *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Savage*, 343 F.3d at 1039 n.2). Plaintiffs have presented affidavits and exhibits attached to their response in opposition to the City's motion.  (Decl. of Geoff Palmer in Supp. of Pls.' Opp'n to Def.'s Mot. to Dismiss ("Palmer Decl."), ECF No. 14-1.)  The City may prevail if it can show by a preponderance of evidence that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), that this Court lacks subject matter jurisdiction.

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "Factual

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   If Plaintiff "ha[s] not nudged" her "claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).   But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### III.   DISCUSSION

#### A. Evidentiary Matters

The City asks the Court to take judicial notice of various San Diego city ordinances as enacted and amended at different times.  (Def.'s Req. for Judicial Notice ("RJN"), ECF No. 13-4.)   Plaintiffs do not oppose.  The Court finds such matters appropriate for judicial notice and grants the request.  *See* Fed. R. Evid. 201(b) (court may take judicial notice of facts "not subject to reasonable dispute" and which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Tollis v. County of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice.").

Next, the Court turns to the extensive evidentiary objections each party has raised to the opposing party's affidavits and exhibits.  (Pls.' Evid. Objs. to Lowe Decl., ECF No. 14-2; Def.'s Evid. Objs. to Palmer Decl., ECF No. 15-1.)   Each party has filed a response in opposition to the opposing party's objections.  (Def.'s Resps. to Pls.' Evid. Objs., ECF No. 15-2; Pls.' Resp. to Def.'s Evid. Objs., ECF No. 17.)   The Court need not rule on all objections raised and will address only those objections that become relevant to the Court's analysis in footnotes below.  All other objections not addressed are overruled as moot.

#### B. Jurisdiction

The City raises three jurisdictional challenges.  The City argues (1) that Plaintiffs

lack Article III standing to challenge the *entirety* of the IAHR and only have standing to challenge the provisions that have been applied to them, (Mot. at 19); (2) that Plaintiffs' challenge is constitutionally unripe "because the City has made no final decision" on the Project and how the IAHR will apply to the Project, (*id.* at 22); and (3) that Plaintiffs' failure to exhaust administrative remedies is a jurisdictional bar to the state law claims, Counts 3–5, (*id.* at 24).  The Court will address these arguments below.  But first, the Court will address whether to construe Plaintiffs' claims as facial or as-applied challenges because the distinction is relevant to the ripeness analyses.

### 1.  Facial Versus As-Applied

Plaintiffs plead as-applied takings claims only (Counts 1 and 3), but that their equal protection and due process claims (Counts 2 and 4) can be construed as both as-applied and facial.  A facial takings challenge involves "a claim that the mere enactment of [an ordinance] constitutes a taking," while an as-applied challenge involves "a claim that the particular impact of government action on a specific piece of property requires the payment of just compensation."  *Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 494 (1987).  There is "an important distinction" between facial and as-applied takings claims as each type of claim "raises different ripeness and statute of limitations issues." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019).  An as-applied challenge is not ripe "until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick*, 588 U.S. 180.  By contrast, "[i]t is fairly well-settled in this Circuit that … the 'finality' requirement[] is not germane to facial taking claims" because such claims allege that the enactment of the challenged regulation itself constitutes a final decision that harmed the plaintiff.  *Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 406 (9th Cir. 1996), *overruled on other grounds by Knick*, 588 U.S. 180.  For standing and ripeness purposes, the alleged injury underlying each type

of challenge is different: the injury underlying a facial challenge is the very enactment of the challenged regulation whereas the injury underlying an as-applied challenge is the administrative action applying that regulation.

Although Palmer nominally brings both facial and as-applied takings challenges, the Court construes them to be as-applied only. First, Plaintiffs do not distinguish between their facial and as-applied claims in the Complaint. Counts 1 and 3 and the Parties' briefing focus on the application of the IAHR to *one specific project*. The takings claims arise from Plaintiffs' submission of an application for building permit. Plaintiffs also fail to plausibly allege that "no set of circumstances exists under which" the IAHR may validly apply, which must be shown to prevail on a facial challenge. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see 74 Pinehurst LLC v. New York*, 59 F.4th 557, 564 (2d Cir. 2023), *cert. denied*, 218 L. Ed. 2d 66 (Feb. 20, 2024) (quoting *Rent Stabilization Ass'n of City of N.Y. v. Dinkins*, 5 F.3d 591, 595 (2d Cir. 1993)) (holding that facial takings claim failed because the plaintiff did not plausibly allege "that 'no set of circumstances exists under which the [challenged New York rent stabilization law] would be valid.'").[2] The Court therefore interprets the Complaint as raising an as-applied takings claim only.[3] However, Plaintiffs' equal protection and due process challenges can be construed as both facial and as-applied because they include allegations concerning both the City's "actions" in its application of the IAHR (*see* Compl. ¶¶ 115–16) and the IAHR's facial lack of a rational relationship to a legitimate legislative purpose (*see id.* ¶¶ 118–19).

/ / /

---

[2] The Court also observes that a facial challenge to the IAHR may now be barred by the statute of limitations. *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011) (California's two-year statute of limitations governs facial takings claims brought under 42 U.S.C. § 1983 and runs from the time of enactment). It appears the provision of the IAHR challenged here was enacted by July 1, 2020. (Compl. ¶ 56.)

[3] Alternatively, even if Counts 1 and 3 can be interpreted as articulating separate facial takings challenges under the federal or California constitutions, the Court would grant the motion to dismiss those claims based on the same reasons stated in this Section under Federal Rule of Civil Procedure 12(b)(6) for failing to allege "sufficient factual matter" to state plausible claims for relief. *Iqbal*, 556 U.S. at 678.

### 2. Constitutional Ripeness

"Standing and ripeness under Article III are closely related." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009). A claim is constitutionally ripe if it "present[s] concrete legal issues … in actual cases, not abstractions." *Id.* (quoting *United Pub. Workers v. Mitchell*, 300 U.S. 75, 89 (1947)). "But whereas 'standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addressees *when* that litigation may occur.'" *Lee v. Oregon*, 107 F.3d 1382, 1387 (9th Cir. 1997). The constitutional ripeness inquiry generally "coincides squarely with standing's injury in fact prong." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). A claim is constitutionally ripe if a court determines the plaintiff's "stake in the legal issues is concrete rather than abstract." *Colwell*, 558 F.3d at 1123.

As explained, "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County*, 473 U.S. at 186.[4] A plaintiff "must show … that 'there [is] no question … about how the regulations at issue apply to the particular land in question.'" *Pakdel v. City and County of San Francisco*, 594 U.S. 474, 478 (2021) (per curiam) (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)) (alteration in original). The finality requirement "is 'relatively modest' and does not require property owners to pursue every administrative channel theoretically available to them." *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1148 (9th Cir. 2022),

---

[4] In *Williamson County* (1985), the Supreme Court established a two-part test for determining whether an as-applied takings claim is ripe. First, "the government entity charged with implementing the regulations" must have "reached a final decision regarding the application of the regulations to the property at issue" (finality requirement). 473 U.S. at 186. Second, the plaintiff must attempt to seek "compensation through the procedures the State has provided," *id.* at 194, if the State "provides an adequate procedure for seeking just compensation," (state-litigation requirement) *id.* at 195. In *Knick v. Township of Scott* (2019), the Supreme Court overruled the state-litigation requirement, *Knick*, 588 U.S. at 205–06, but left the finality requirement intact, *id.* at 188 ("[The] finality requirement … is not at issue here.").

*cert. denied*, 144 S. Ct. 95 (2023) (quoting *Pakdel*, 594 U.S. at 478).

The City argues that Plaintiffs' takings claim is unripe "because the City has made no final decision" on the Project, and because Plaintiffs have not "pursued an exemption [per San Diego Municipal Code § 142.1303] or a variance, waiver, adjustment or reduction of the IAHR requirements [per Municipal Code §§ 142.1310–11]." (Mot. at 22.)  In response, Plaintiffs argue: (a) "there is no question about the [C]ity's position"; (b) the City itself has conceded that the Project "does not fit the criteria for an 'exemption'" from the IAHR; and (c) "it is apparent from the text of the [IAHR] … that further pursuit of administrative relief, whether by waiver or variance, would be futile." (Opp'n at 15.)  The Court concludes Plaintiffs have not satisfied the *Williamson County* finality requirement because (1) the City has not reached a conclusive determination, and (2) avenues remain available for the City to clarify or change its position.

### a.  No Conclusive Determination

The City has made no conclusive determination on how the IAHR will apply to the Project.  The Court begins with an overview of *Pakdel*.  The plaintiffs in *Pakdel* were a married couple with a partial ownership interest in a multiunit residential building in San Francisco.  594 U.S. at 475.  The building was organized as a tenancy-in-common, meaning all owners theoretically held rights to possess and use the entire property.  *Id*.  The City of San Francisco established a condominium conversion program by which such tenancy-in-common owners could convert their interest into ownership of their individual units.  *Id.* at 476.  One of the conditions for conversion was that nonoccupant owners who rented their unit had to offer a lifetime lease to the tenant.  *Id.*  The plaintiffs agreed to this condition, and the city approved their application for conversion.  *Id.*  Months later, the plaintiffs asked the city to excuse them from executing a lifetime lease or to compensate them for the value of the lifetime lease.  *Id.*  The city denied the request and advised that failure to execute the lifetime lease could result in an enforcement action.  *Id.*

The *Pakdel* plaintiffs filed suit in federal court claiming, inter alia, that the lifetime lease requirement amounted to a regulatory taking.  *Id.*  Relying on then-binding

precedent—*Williamson County*'s state-litigation requirement—the district court dismissed the claim because the plaintiffs had not sought compensation in state court before filing the takings claim in federal court. *Id.* at 476–77 (citing *Williamson County*, 473 U.S. at 194). While the *Pakdel* plaintiffs' appeal was pending, the Supreme Court decided *Knick* which overruled *Williamson County*'s state-litigation requirement. *Id.* at 477. The Ninth Circuit nonetheless affirmed the dismissal on a different ground. It reasoned that the City's decision on how the lifetime lease requirement applied to the plaintiffs' unit "was not truly 'final'" because the plaintiffs "had made a belated request for an exemption" six months after obtaining final approval for the conversion instead of "timely" seeking an exemption through prescribed procedures. *Id.* at 477–78.

The Supreme Court granted certiorari, vacated the Ninth Circuit's judgment, and remanded. *Id.* at 481. It explained "there is no question about the city's position: Petitioners must execute the lifetime lease or face an enforcement action." *Id.* at 478 (internal quotations omitted). It continued: "And there is no question that the government's 'definitive position on the issue [has] inflict[ed] an actual, concrete injury' of requiring petitioners to choose between surrendering possession of their property or facing the wrath of the government." *Id.* at 478–79 (quoting *Williamson County*, 473 U.S. at 193) (alterations in original). Importantly, the Supreme Court explained that "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain for the government to clarify or change its decision." *Id.* at 480. But the Court found no such avenues remained and that the city had "adopted its final position." *Id*. "For the limited purpose of ripeness," that was "sufficient." *Id.* at 481.

But here, unlike *Pakdel*, the City has not "adopted [a] final position" on Plaintiffs' application for a building permit. The factual record before the Court shows Palmer's "initial project application" was "deemed complete" on March 3, 2023, but it has not received final approval. (Lowe Decl. ¶ 6.) As of March 1, 2024 (date of the Lowe Declaration), the application remained "*pending*." (*Id.*) On June 6, 2023, the City of San Diego Development Services Department ("DSD") "provided a Project Issues Report" and

12

Comment 00157 within that Report stated: "Project proposes to pay the inclusionary affordable housing fee per [Municipal Code §] 142.1306.  Staff to add housing fees for each phase as units are proposed."  (*Id.* ¶ 11 & Ex. 2.[5])  This comment appearing in the City's preliminary review can hardly be characterized as a "conclusive position" on how the IAHR applies to the Project.  *Pakdel*, 594 U.S. at 480.  Not even Plaintiffs seem to think so because on August 7, 2023, they sent a letter to the City asking it "to clarify" Comment 00157 and to "confirm" that the Project is exempt from the IAHR requirements.  (*Id.* ¶ 12, Ex. 3[6]; *see* Palmer Decl. ¶ 6, "Plaintiffs sent written inquiries to the City seeking *clarification* as to the City's failure to acknowledge or accept Plaintiffs' prior request for exemption …," emphasis added.)  On August 10, 2023, a City DSD employee responded asking Plaintiffs to "expand" on why they "believe the project is exempt from inclusionary housing requirements."  (*Id.* ¶ 13, Ex. 4.)  The City received no response.  (*Id.* ¶¶ 16–17.)  This is not a situation where the City has made its position clear.  *Compare Lustig v. City of Laguna Beach*, No. 8:22-CV-01945-DOC, 2023 WL 6370231, at *5 (C.D. Cal. Aug. 10, 2023) (letter stating "unless the project can be redesigned to eliminate any such inconsistency, the project *would appear* to be rendered infeasible" was only a "preliminary review" and "not a *final determination* that the project was infeasible") (first emphasis

---

[5] The Court overrules Plaintiffs' hearsay objections to Paragraphs 10–13 and 16 and Exhibits 1–4 (ECF No. 14-2).  Hearsay is a statement made outside of the current trial or hearing that is offered in evidence to prove the truth of the matter asserted therein. Fed. R. Evid. 801(c).  Hearsay is generally "inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a hearsay exception under Rules 803, 804 or 807."  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002) (citing Fed. R. Evid. 802).  However, "[i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it" for purposes of the pending motion.  *Sandoval v. County of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).  Here, Ms. Elyse Lowe, the author of the declaration would "competently testify" to the contents of her declaration at trial "[i]f called as a witness."  (Lowe Decl. ¶ 3.)  Additionally, Exhibits 1–4 are not hearsay because they are not offered for the "truth" of any matter asserted within them.  But even if it were hearsay, they would fall under one or more exceptions to the rule against hearsay. *See, e.g.*, Fed. R. Evid. 803(6) (records of a regularly conducted activity); *id.* 803(8) (public records).

[6] Exhibit 3 is not hearsay for the additional reason that it is a party admission.  *See* Fed. R. Evid. 801(d)(2).

added) *with Evans Creek, LLC v. City of Reno*, No. 3:20-CV-00724-MMD, 2021 WL 4173919, at *7 (D. Nev. Sept. 14, 2021), *aff'd*, No. 21-16620, 2022 WL 14955145 (9th Cir. Oct. 26, 2022) (plaintiff satisfied finality requirement because city denied building permit application which was a conclusive "determin[ation] that Plaintiff cannot, in practice, develop the Property" as he desired) *and BJA Enters. LLC v. City of Yuma*, No. 20-CV-01901 ROS, 2021 WL 3912857, at *2 (D. Ariz. Aug. 31, 2021) (city reached a final decision where it prospectively informed property owner in writing that it "would not issue any approvals for construction on the property" and "further discussions of development were futile"). "Here," by contrast, "it is entirely in question how the regulations at issue apply" to Plaintiff's project because the City has made no final "determination, de facto or otherwise, on the merits of" Plaintiffs' application. *DiVittorio v. County of Santa Clara*, No. 21-cv-3501-BLF, 2022 WL 409699, at *7 (N.D. Cal. Feb. 10, 2022), *appeal dismissed*, No. 22-15370, 2022 WL 4103276 (9th Cir. July 13, 2022).

In addition, Plaintiffs do not face "the wrath of the government" as the *Pakdel* plaintiffs did. 594 U.S. at 479. In *Pakdel*, the city of San Francisco had already granted final approval to the plaintiffs' application for condominium conversion and threatened an enforcement action if the plaintiffs failed to follow through with executing a lifetime lease. *Id.* Plaintiffs face no enforcement action here. Finally, the City has affirmed by declaration that "[n]o final decision has been made … on the issue of whether the inclusionary housing requirements apply to" Plaintiffs' project. (Lowe Decl. ¶ 21.[7]) Accordingly, the City has

---

[7] The Court overrules Plaintiffs' objections to Paragraphs 13–15 and 20–22 for improper lay testimony. (ECF No. 14-2, at 4–6, 11–13.) Federal Rule of Evidence 701 provides that a lay witness may testify "in the form of an opinion" if it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. "A lay witness's opinion testimony necessarily draws on the witness's own understanding, including a wealth of personal information, experience, and education, that cannot be placed before the jury." *United States v. Gadson*, 763 F.3d 1189, 1208 (9th Cir. 2014). The assertions in Paragraphs 13–15 and 20–22 consist of observations made in the declarant's capacity as director of the City of San Diego's Development Services Department. To the extent some assertions constitute opinions—e.g., Paragraph 14 ("Therefore, the project does not appear

made no conclusive determination on how and to what extent the IAHR requirements will apply to the Project here.

### b. Avenues Remaining for Clarification

Further, avenues remain available for Plaintiffs to clarify how the IAHR will apply to their Project. Although the Supreme Court made clear that "administrative 'exhaustion of state remedies' is not a prerequisite for a takings claim," *Pakdel*, 594 U.S. at 480 (quoting *Knick*, 588 U.S. at 185), and that "the finality requirement is relatively modest," *id.* at 478, it also explained that plaintiffs must "pursue administrative procedures" if the government has not "reached a conclusive position" and "avenues still remain for the government to clarify or change its decision," *id.* at 480; *see Patel v. City of South El Monte*, No. 21-55546, 2022 WL 738625 (9th Cir. Mar. 11, 2022) (unpublished) (to "satisfy the finality requirement," "courts generally require that a plaintiff seek a variance or exemption" if one is available). It is clear that at least one such avenue remains here: Plaintiffs may seek a "variance, waiver, adjustment or reduction" as provided by San Diego Municipal Code §§ 142.1310–11.

Plaintiffs argue that it would be futile to pursue such relief because "the inapplicability of the Code's very limited provisions for the City to possibly authorize a waiver or variance is apparent from the face of the Code." (Opp'n at 9.) This is not so— "even if there are reasons to think that an outcome unfavorable to plaintiffs is probable." *Little Woods Mobile Villa LLC v. City of Petaluma*, No. 3:23-CV-05177-CRB-1, 2024 WL 2852140, at *6 (N.D. Cal. June 4, 2024). The City could grant relief under Section

---

to be exempt from the City of San Diego inclusionary housing requirements.") and Paragraph 21 (same)— such opinions are appropriate. The Lowe Declaration lays a sufficient foundation establishing Ms. Lowe as director of the agency charged with administering San Diego's regulations on land use and property development. She has been the director of the City of San Diego's Development Services Department since 2018, and deputy director before that from 2014–18. (Lowe Decl. ¶¶ 1–2.) The testimony contained in these paragraphs are admissible based on Ms. Lowe's "experience, qualifications, and personal perceptions on how [the regulations are] administered." *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 810 (C.D. Cal. 2022), *aff'd*, No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024).

142.1311(a) if it finds all of the following: (1) there are special circumstances unique to the development, (2) the development would not be feasible without modification, (3) a "specific and substantial" financial hardship would occur without modification, and (4) no alternative means of compliance are feasible.  San Diego Mun. Code. § 142.1311(a).  The City could also grant relief under subsection (b) if it finds that applying the IAHR requirements would take property in violation of the United States or California constitutions.  *Id.* § 142.1311(b).  Plaintiffs have not shown that seeking relief under either of these avenues would be futile or that the text of the Code requires denial of their request for modification.[8]  Plaintiffs submit the declaration of Geoff Palmer, which states:

> I have also reviewed [Municipal Code] § 142.1311 personally and in consultation with other members of Plaintiffs' development team and legal counsel and I am familiar with its specification of limited grounds for the City to consider or approve a "variance, waiver, adjustment or reduction from the [IAHR] requirements, including the specific "findings" that would be required for such an approval.  Based on my personal knowledge of the Project, the economic and environmental circumstances and physical conditions surrounding the Project, and other characteristics of the proposed Project, it would be futile to pursue an application for a waiver under that Section.

/ / /

---

[8] At oral argument, counsel for Plaintiffs suggested it would be futile to seek modification under subsection (b) because under California law that "it is inherently futile to ask a governmental agency to declare itself or its program to be unconstitutional."  (Prelim. Tr. of Hr'g.)  It is true that California law precludes "an administrative agency" from "declar[ing] a statute unenforceable" or "refus[ing] to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination."  Cal. Const. Art. III, § 3.5; *Kloepfer v. Comm'n on Jud. Performance*, 49 Cal. 3d 826, 833 n.3 (1989) (citing Cal. Const., art. III, § 3.5) (holding petitioner "was not required … to engage in the presumptively futile exercise of objecting to" administrative procedures because the agency "lacks authority to declare those rules invalid").  But here, Plaintiffs would request the City to find only that a particular application of the IAHR effects an unconstitutional taking.  Such a request does not require the City to declare the entire IAHR unenforceable or to refuse to enforce the IAHR.  Subsection (b) explicitly grants City officials authority to make such a determination.  *See Lockyer v. City & County of San Francisco*, 33 Cal. 4th 1055, 1086 (2004) ("[A]dministrative bodies and officers have … such powers as have expressly or impliedly been conferred upon them by the Constitution or by statute.") (quoting *Cal. State Rest. Ass'n v. Whitlow*, 58 Cal. App. 3d 340, 346–47 (1976)).

16

(Palmer Decl. ¶ 9.[9])  This conclusory assertion represents Mr. Palmer's opinion on how the City would respond to Plaintiffs' request for modification; but it is for the City to decide, not Mr. Palmer.  As explained, the text of the Code grants City officials discretion to make findings that would allow it to grant a modification and lower courts have held that a decision is not final until local governments exercise such discretion when available.  *See, e.g.. Mendelson v. San Mateo County*, No. 23-15494, 2024 WL 3518319, at *1 (9th Cir. July 24, 2024) (unpublished) (declining to construe county regulations as a categorical bar to the plaintiff's desired development because "[t]he County has discretion … to waive its … development restrictions to avoid an unconstitutional taking"); *Ralston v. County of San Mateo*, No. 21-16489, 2022 WL 16570800, at *2 (9th Cir. Nov. 1, 2022) (unpublished), *cert. denied*, 144 S. Ct. 101 (2023) ("Accepting [plaintiff's] argument that the County's … regulations alone serve as the County's final decision would strip the County of its ability to interpret and apply its own regulations as they relate to [plaintiff's] property.")  At oral argument, counsel for the City confirmed that the City has no position on how it would respond to a request under subsection (a).  (*See* Prelim. Tr. of Hr'g, "Who knows what would happen.")  Plaintiffs' allegation that "the City has not granted waivers or relief from the [IAHR requirements] for projects such as Plaintiffs' Project," (Compl. ¶ 77), even if true, does not negate the fact that the City may exercise discretion *here*.

The reasoning in *Pakdel* confirms that Plaintiffs must request modification under Section 142.1311 so long as denial is not certain.  In *Pakdel*, the Supreme Court held that

---

[9] The Court overrules the City's objections to above-quoted portion of Paragraph 9.  There is no hearsay problem because Mr. Geoff Palmer, the author of the declaration, would "testify competently" to the contents of his declaration at trial "[i]f called as a witness."  (Palmer Decl. ¶ 1.)  *See Sandoval*, 985 F.3d at 666.  And there is no improper lay testimony issue because the assertions in Paragraph 9 are the declarant's observations and opinions based on his experience overseeing real estate development projects, including the Project at issue here, and such testimony would be admissible at trial.  *See Gadson*, 763 F.3d at 1208.  Other objections on grounds that the assertion is speculative, argumentative, conclusory, lacking foundation, etc., "are all duplicative of the summary judgment standard itself," *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006), and "unnecessary to consider here," *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019).

the plaintiffs need not have sought an exemption to satisfy the finality requirement after the city had already granted final approval on their application for condominium conversion. 594 U.S. at 480–81. Such a request was truly futile because it was "belated," and the City "could no longer grant relief" at the time it was made. *Id.* at 477 (alteration and internal quotes omitted). The *Pakdel* Court emphasized that "administrative *missteps* do not defeat ripeness once the government has adopted its final position." *Id.* at 480 (emphasis added). Here, Plaintiffs have not shown that seeking modification through Municipal Code § 142.1311 now would be untimely or amount to a "misstep." *See also Ballard v. City of West Hollywood*, No. CV 23-4367 FMO, 2024 WL 3593999, at *2 (C.D. Cal. Jan. 3, 2024) ("[A] takings claim must be dismissed for lack of finality where the plaintiff could have, but did not, seek a zoning variance.").

This Court's conclusion is consistent with recent lower court decisions within the Ninth Circuit. In *Ralston v. County of San Mateo*, the plaintiffs sought to construct a single-family home on their parcel of land located in a "riparian corridor" within which the County restricted residential development. No. 21-CV-01880-EMC, 2021 WL 3810269, at *2 (N.D. Cal. Aug. 26, 2021), *aff'd*, No. 21-16489, 2022 WL 16570800 (9th Cir. Nov. 1, 2022). Plaintiffs never applied for a building permit but requested review by the County's "Community Development Director." *Id.* The Development Director stated in response that "no home on the Property would be allowed." *Id.* The plaintiffs challenged the decision in federal court as a taking in violation of the United States constitution. *Id.* at *3. The district court dismissed the action for lack of constitutional ripeness and found that there was no final decision for two reasons. *Id.* at *5–9. First, the court explained that the plaintiffs had not applied for a building permit and "the Planning Director's preliminary statements cannot constitute a 'final decision.'" *Id.* at *6. Second, the court explained that the Planning Director's "preliminary statements" did not "foreclose the possibility that the County might conclude otherwise if Plaintiffs submit a proper … application" because even if development "would normally not be permitted, … [county regulations] allow[] for exceptions where a taking occurs." *Id.* The court noted that the County has previously

granted building permits in such situations "with mitigatory conditions." *Id.* Here too, the Project Issues Report and Comment 00157 are no more than "preliminary statements" and Plaintiffs may still seek a modification on how the IAHR applies to their Project.

And in *Little Woods Mobile Villa LLC v. City of Petaluma*, owners of a mobile home park challenged a city ordinance that restricted the ability of mobile home park operators to close their parks as a taking in violation of the United States constitution. 2024 WL 2852140, at *1. The court found the claim unripe because the plaintiffs did not "appl[y] for closure … or receive[] any other determination related to their ability to close" from the city. *Id.* at *7. The court rejected the plaintiffs' argument that "the outcome of their application would be certain" and result in "either a denial or … the imposition of impossibly high mitigation costs as a condition of closure." *Id.* It concluded that city regulations allow for some degree of flexibility, and therefore, that there was at least some "dispute about what rules the City would apply if it were faced with an application from Plaintiffs." *Id.* at *7–8. The same is true here.

In short, the Court holds that Plaintiffs' takings claim is not ripe because the City has not reached a final decision. While the line between administrative exhaustion, on the one hand, and "avenues … remain[ing] for the government to clarify or change its decision," *Pakdel*, 594 U.S. at 480, on the other, remains unclear, it is clear here that the City here has not yet "committed to a position," *id.* at 479, and "avenues still remain for the government to clarify or change its decision" on how the IAHR will apply to Plaintiff's Project. *Id.* at 480. The finality requirement "ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm." *Id.* at 479 (quoting *Horne v. Dep't of Agric.*, 569 U.S. 513, 525 (2013)). Although the takings claim here will likely ripen and make its way back to court eventually, it is important for the Court to first "know[] how far the regulation goes" before it can determine it "has gone too far." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 (1986)). For example, to evaluate Palmer's unconstitutional conditions claim, the Court will need to determine whether "there is a 'nexus' and 'rough proportionality,'" *Koontz v.*

19

*St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) (quoting *Dolan v. City of Tigard,* 512 U.S. 374, 391 (1994); *Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 837 (1987)), between the "monetary exaction[]" (in-lieu fees) the City demands, *id.* at 612, and the City's interest in promoting "diverse and balanced neighborhoods with housing available for households of all income levels," San Diego Mun. Code § 142.1301.[10]  The Court cannot do this until the assessed fee is certain.  The City's decision on a request for modification could reduce the fee.  Without certainty on how the IAHR will apply, reaching the merits would require the Court to issue an advisory opinion.  *See Anchorage Equal Rts. Comm'n*, 220 F.3d at 1138 ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.").  The ripeness doctrine "is designed to avoid" this.  *Little Woods*, 2024 WL 2852140, at *8.

For these reasons, the Court finds the City has shown "by a preponderance of the evidence," *Leite*, 749 F.3d at 1121, that the as-applied takings claim is unripe and grants the City's motion to dismiss Count 1.  The Court also grants the motion to dismiss Count 2 to the extent it raises as-applied equal protection and due process challenges which are subject to the same ripeness requirement.  *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1507 (9th Cir. 1990) ("In evaluating the ripeness of due process or equal protection claims arising out of the application of land use regulations, we employ the same final decision requirement that applies to … taking claims.").

### 3.  Exhaustion of State Law Claims

Unlike federal claims not subject to an exhaustion requirement, "the rule of exhaustion of administrative remedies is well established in California jurisprudence" and applies to Plaintiffs' state law claims.  *Campbell v. Regents of Univ. of Cal.*, 35 Cal. 4th

---

[10] Earlier this year, the Supreme Court held that the *Nolan*/*Dollan* nexus and rough proportionality test applies to legislative and administrative conditions alike.  *Sheetz v. County of El Dorado*, 601 U.S. 267, 279–80 (2024).  The test therefore would apply to the IAHR here.

311, 321 (2005). The administrative exhaustion rule requires that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Id.* (quoting *Abelleira v. District Court of Appeal*, 17 Cal. 2d 280, 292 (1941)). It "is 'a jurisdictional prerequisite to resort to the courts.'" *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (quoting *Abelleira*, 17 Cal. 2d at 293). However, there are exceptions to the rule, including "(1) when the administrative agency cannot provide an adequate remedy, and (2) when the subject of controversy lies outside the agency's jurisdiction." *Campbell*, 35 Cal. 4th at 322 (citing *Edgren v. Regents of Univ. of Cal.*, 158 Cal. App. 3d 515, 520–21 (1984)). When an agency's "authority to act in a particular area derives wholly from statute, the scope of that authority is measured by the terms of the governing statute." *Lockyer*, 33 Cal. 4th at 1086.

Plaintiffs have not satisfied the exhaustion rule for their as-applied state constitutional claims (Counts 3–4). This analysis overlaps with the ripeness analysis above. As explained, Plaintiffs have not pursued modification under Municipal Code Sections 142.1310–11 which may allow the City to modify application of the IAHR to the Project. *See Hensler v. City of Glendale*, 8 Cal. 4th 1, 13–14 (1994) (property owner may bring as-applied challenge to development restrictions only after "afford[ing] the [agency] the opportunity to … exempt the property from the allegedly invalid … restriction") (internal quotes omitted). However, Plaintiffs have satisfied the administrative exhaustion requirement for their facial equal protection and due process challenges under the California constitution in Count 4 and other state law challenges in Count 5 because the City lacks authority to declare the IAHR unenforceable, as explained above. *See supra* footnote 8; Cal. Const. Art. III, § 3.5; *Kloepfer*, 49 Cal. 3d at 833 n.3 (1989).

Accordingly, the Court grants the City's motion to dismiss Plaintiffs' as-applied state law constitutional challenges in Counts 3 and 4 for lack of jurisdiction because Plaintiffs have failed to exhaust administrative remedies. The Court denies the motion as to the other state law claims because administrative remedies would be futile.

/ / /

### 4. Article III Standing

Finally, the Court addresses the City's argument that Plaintiffs lack standing to challenge the *entire* IAHR. The City does not dispute that Plaintiffs have Article III standing to bring the claims raised in the Complaint if they are constitutionally ripe. Accordingly, this argument may be appropriate at the remedies phase concerning the scope of any equitable relief but the Court need not address it now. *See Renna v. Bonta*, 667 F. Supp. 3d 1048, 1069 (S.D. Cal. 2023), *appeal docketed*, No. 23-55367 (9th Cir. Apr. 20, 2023) (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)) ("If a challenged statute contains 'unobjectionable provisions separable from those found to be unconstitutional,' the court must sever such provisions.").

**C. Merits**

Because the Court has dismissed on jurisdictional grounds Counts 1 and 3 (takings claims), and Counts 2 and 4 (equal protection and due process claims) to the extent that they raise as-applied challenges, the only claims left are Counts 2 and 4 to the extent they raise facial challenges, and Count 5. For the following reasons, the Court grants the City's Rule 12(b)(6) motion to dismiss the remaining claims on the merits.

### 1. Counts 2 and 4: Facial Due Process and Equal Protection Challenges

Plaintiffs allege that the IAHR facially violates their liberty interests protected by the Due Process Clause of the Fourteenth Amendment (substantive due process) as well as the Equal Protection Clause of the Fourteenth Amendment. *See* U.S. Const. amend. XIV. Plaintiffs also raise claims based on violations of analogous provisions of the California Constitution. *See* Cal. Const. art. I, § 7. Because federal and California substantive due process and equal protection claims are analyzed the same, *see S.F. Taxi Coal. v. City and County of San Francisco*, 979 F.3d 1220, 1224 n.4 (9th Cir. 2020) ("California law is functionally identical to federal law in this area."), these claims are analyzed together.

#### a. Substantive Due Process

The IAHR does not facially violate the Due Process Clause of the Fourteenth Amendment. "Substantive due process 'forbids the government from depriving a person

22

of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)). "Laws that do not infringe a fundamental right survive substantive-due-process scrutiny so long as they are 'rationally related to legitimate government interests.'" *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1085 (9th Cir. 2015) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 728 (1997)).

Plaintiffs allege they have "constitutionally-protected rights in their property, including rights to exclude uninvited third persons, as well as rights in their applications for approvals to use and develop their property consistently with the applicable and lawful provisions of the City's planning and zoning." (Compl. ¶ 114.) These alleged rights "are economic in nature." *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) (characterizing alleged "right to use property as one wishes" as "economic in nature"). "The proper test for judging the constitutionality of statutes regulating economic activity … is whether the legislation bears a rational relationship to a legitimate state interest." *Jackson Water Works, Inc. v. Pub. Util. Comm'n of Cal.*, 793 F.2d 1090, 1093–94 (9th Cir. 1986). Under this deferential standard, Plaintiffs must show that the IAHR is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012).

Plaintiffs do not dispute that this claim is subject to rational basis review and "do[] not question" that the ordinance's stated purpose of "encouraging more affordable housing is a legitimate public goal." (Opp'n at 32; *see also* Compl. ¶ 6.) The IAHR enables the City to ensure there are housing units available for lower income persons in all large new developments, or alternatively, to raise revenue it can spend on acquiring such housing units. This rationally advances the IAHR's purpose of "encourag[ing] diverse and balanced neighborhoods." San Diego Mun. Code § 142.1301. "Where there are 'plausible reasons'" for enacting the legislation, a court's "'inquiry is at an end.'" *F.C.C. v. Beach*

*Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993) (quoting *U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).  Accordingly, the IAHR is "presumed valid" and Plaintiffs have not "overcome" this presumption "by a clear showing of arbitrariness and irrationality." *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994).

### b. Equal Protection

The IAHR also does not facially violate the Equal Protection Clause.  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Beach Commc'ns*, 508 U.S. at 313.  Plaintiffs allege the IAHR singles out "developers of new multi-family housing":

> [T]he City is intentionally treating one class of property owners – developers of new multi-family housing, including Plaintiffs – differently from other similarly-situated property owners or City residents, and requiring them to relinquish or contribute more than others in order to address the City's existing housing deficiencies and ostensible future affordable housing needs and programs, and to provide newly-constructed residential rental dwelling units which purportedly benefit the community as a whole, without providing any rational basis for the difference in treatment.

(Compl. ¶ 118.)  Plaintiffs do not dispute that the rational basis test applies because "developers of new multi-family housing" are not a suspect class.  On rational basis review, a legislative classification "bear[s] a strong presumption of validity," and "those attacking the rationality of the legislative classification have the burden 'to negative every conceivable basis which might support it.'"  *Beach Commc'ns*, 508 U.S. at 315 (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 364 (1973)).  It is conceivable here that the City Council prospectively subjected only new developments of a certain size to the IAHR requirements to avoid excessive economic disruption that would result from applying the IAHR to existing and small-scale developments.  That is sufficient.  *Id.* at 313–14 (where there are "plausible reasons," the court's inquiry ends).

Plaintiffs also do not state a "class-of-one" claim.  "[A]n equal protection claim can

in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008).  To plead a class-of-one equal protection claim, Plaintiffs "must allege facts showing that they have been '[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment.'" *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1122–23 (9th Cir. 2022) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, (2000) (per curiam)) (alterations in original).  However, Plaintiffs acknowledge that the IAHR applies to all "developers of new multi-family housing" and do not allege they are the only such developers in the City of San Diego.  Nor have Plaintiffs alleged facts showing the IAHR *facially* singles them out.  A plain reading of the IAHR confirms no such assertion is possible.

The IAHR advances a legitimate government interest and "bears a rational relationship" to that interest as a matter of law.  *Slidewaters*, 4 F.4th at 758 (quoting *Jackson Water Works*, 793 F.2d at 1093–94).  The IAHR also makes valid classifications and does not single out Plaintiffs as a "class of one."  Accordingly, the Court finds that leave to amend would be futile.  Plaintiffs will not be able to allege any additional facts to overcome the strong presumption of validity on a facial challenge.  Plaintiffs' facial equal protection and substantive due process claims are dismissed with prejudice.  *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (leave need not be granted if amendment would be futile).  Plaintiffs may still raise as-applied challenges when ripe.

## 2. Count 5: Additional State Law Claims

Plaintiffs' remaining state law arguments within Count 5 either fail to state a claim or are duplicitous of Plaintiffs' other claims.  First, Plaintiffs argue the City has failed to comply with the requirements of Article XIII C, Section 1(e) of the California Constitution because the IAHR was not approved by voters and the City has not "sustained [its] burden of proving by a preponderance of evidence that the new exactions or charges they demand under the guise of the [IAHR] are not in fact 'taxes' requiring voter approval."  (Compl. ¶

25

138(A).)  Article XIII C "restricts the authority of local governments to impose taxes by, among other things, requiring voter approval of all taxes imposed by local governments," *City of San Buenaventura v. United Water Conservation Dist.*, 3 Cal. 5th 1191, 1200 (2017), but it excludes from the definition of tax: "charge[s] imposed as a condition of property development" and "[a]ssessments and property-related fees imposed in accordance with the provisions of Article XIII D," Cal. Const. art. XIII C, § 1(e)(6)–(7). Plaintiffs do not dispute that the IAHR in-lieu fees are "charge[s] imposed as a condition of property development." *Id.* § 1(e)(6).  Accordingly, this claim fails, and the Court grants the motion to dismiss the claim with prejudice because amendment would be futile.  *See Ascon Props., Inc.*, 866 F.2d at 1160.

Second, Plaintiffs argue that the City "failed to prove any reasonable nexus and rough proportionality between its exactions and impacts caused by development of new rental units and justify [the IAHR] fees and exactions as required by the Constitutions of the United States and the State of California."  (Compl. ¶ 138(B).)  Plaintiffs provide no legal basis for this claim and it is unclear how it differs from the *Nolan*/*Dollan* exactions theory raised within their takings claims.  Accordingly, Plaintiffs fail to allege "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court grants the motion to dismiss this claim.  Plaintiffs may raise this theory within their takings claims.

Third, Plaintiffs argue that the IAHR fails to comply with the requirements of the California Mitigation Fee Act, Cal. Gov't Code §§ 66000–06.  (Compl. ¶ 138(C).)  The Act requires that "legislatively imposed development mitigation fees" "bear a reasonable relationship, in both intended use and amount, to the deleterious public impact of the development."  *San Remo Hotel L.P. v. City and County of San Francisco*, 27 Cal. 4th 643, 671 (2002) (citing Cal. Gov't Code § 66001).  The Act defines such a "fee" as:

> a monetary exaction other than a tax or special assessment, … that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project.

26

Cal. Gov't Code § 66000(b).  The California Supreme Court has in turn defined "exactions" as "conditions on development a local agency imposes that divest the developer of money or a possessory interest in property," but not restrictions on the ways "a developer may use its property." *Sterling Park, L.P. v. City of Palo Alto*, 57 Cal. 4th 1193, 1207 (2013).  As currently pled, this claim is derivative of Plaintiffs' takings claims because it relies on the premise that the IAHR in-lieu fees are unlawful exactions.  Because the takings claims are dismissed, the Court cannot determine whether Plaintiffs have adequately alleged that the IAHR's in-lieu fees are unlawful exactions.  Accordingly, the Court grants the motion to dismiss this theory with leave to amend.[11]

Finally, Plaintiffs argue the IAHR's "exactions and fees improperly fail to distinguish between existing needs for affordable housing and new or increased public 'needs' supposedly caused by new market rate housing development, and improperly include admittedly-existing deficiencies in the community's stock of affordable housing." (Compl. ¶ 138(D).)  Plaintiffs plead no legal basis for this theory.  Accordingly, Plaintiffs fail to allege "sufficient factual matter, accepted as true, to 'state a claim to relief,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), and the Court grants the motion to dismiss this claim.  In their Opposition, Plaintiffs point to California Government Code § 66001(g), part of the Mitigation Fee Act, which states that a development mitigation fee:

> shall not include the costs attributable to existing deficiencies in public facilities, but may include the costs attributable to the increased demand for public facilities reasonably related to the development project in order to (1) refurbish existing facilities to maintain the existing level of service or (2) achieve an adopted level of service that is consistent with the general plan.

Cal. Gov't Code § 66001(g).  Plaintiffs may incorporate an argument based on this provision as part of a Mitigation Fee Act claim in an amended complaint.

---

[11] The Court also observes that before Plaintiffs can raise a Mitigation Fee Act claim, they must first "[t]ender[] any required payment in full or provid[e] satisfactory evidence of arrangements to pay the fee when due or ensure performance of the conditions necessary to meet the requirements of the imposition." Cal. Gov't Code § 66020(a)(1).

# IV. CONCLUSION AND ORDER

Accordingly, the Courts **GRANTS IN PART** the City's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and **GRANTS IN PART** the City's Rule 12(b)(6) motion for failure to state a claim.

**IT IS HEREBY ORDERED**:

(1) Counts 1 and 3: Plaintiffs' takings claims are **dismissed without prejudice** for lack of subject matter jurisdiction.

(2) Counts 2 and 4: Plaintiffs' equal protection and due process claims are **dismissed without prejudice** for lack of subject matter jurisdiction to the extent they raise as-applied challenges; and **dismissed with prejudice** to the extent they raise facial challenges.

(3) Count 5: Plaintiffs' claim for equitable relief based on other state law violations is **dismissed without prejudice** to the extent it relies on a California Mitigation Fee Act violation; and **dismissed with prejudice** as to all other theories.

If Plaintiffs believe they have good cause to allege additional facts that would cure the deficiencies identified in this Order pertaining to claims dismissed without prejudice (e.g., if there have been developments in the building permit application process such that Plaintiffs now believe the City has reached a final decision), they may file an amended complaint within twenty-one (21) days of the date of this Order. If Plaintiffs elect not to file an amended complaint, the Clerk will enter judgment of dismissal and close this case.

**IT IS SO ORDERED.**

Dated: August 22, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court

28

23-cv-1755-DMS-BJC