# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

PALMER KEARNEY MESA
PROPERTIES, LP, a California limited
partnership; GH PALMER, INC., a
California corporation,

                              Plaintiffs,

        v.

CITY OF SAN DIEGO, a California
municipal corporation,

                              Defendant.

Case No.:  23-cv-01755-DMS-BJW

**ORDER GRANTING DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

        Pending before the Court is Defendant City of San Diego's Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC") for lack of subject-matter jurisdiction and for failure to state a claim ("Motion").  (Mot., ECF No. 52).  Plaintiffs filed an Opposition and the City filed a Reply.  (Opp'n, ECF No. 56; Reply, ECF No. 59).  Plaintiffs twice filed supplemental authority.  (Palmer First Suppl., ECF No. 61; Palmer Second Suppl., ECF No. 67).  The City filed supplemental authority, which Plaintiffs objected to and moved to strike.[1]  (City Suppl., ECF No. 65; Palmer Objs., ECF No. 66).  For the following reasons, the City's Motion is granted.

---

[1] Plaintiffs moved to strike Defendant's Notice of Supplemental Authority because it was filed without leave of court and cited an unpublished case that relied on a "discredited" plurality opinion.  (ECF No. 66).  However, this Order does not rely on the cited decision and as such, Plaintiffs' Motion to Strike is **DENIED AS MOOT**.

1

# I.    BACKGROUND

## A. The IAHR

In this action, Plaintiffs challenge the validity of the City's inclusionary Affordable Housing Regulations ("IAHR").  S.D., Cal., Municipal Code §§ 142.1301–1314 (2025); (*see* SAC, ECF No. 42).  The City first adopted the IAHR in 2003 with the purpose of "encourag[ing] diverse and balanced neighborhoods with housing available for households of all income levels."  § 142.1301.  The City explained that the intent behind the IAHR was to "ensure that when developing the limited supply of developable land, housing opportunities for persons of all income levels are provided."  *Id.*  The IAHR has been amended several times since 2003.  In its current form, the IAHR requires developers of certain new developments to set aside 10% of residential units for low-income households "at a cost, including an allowance for utilities, that does not exceed 30 percent of 60 percent of median income."  § 142.1304(a).  This requirement applies to new developments of five or more units in the "Coastal Overlay Zone" and to new developments of ten or more units elsewhere in the City.  § 142.1302.  The San Diego Housing Commission determines qualifications for occupancy of IAHR affordable units.  § 142.1312.  The affordable units remain restricted for "a period of not less than 55 years" by covenants recorded in the deeds.  §§ 142.1304(f), 142.1313.  In lieu of setting aside restricted units, the IAHR allows developers to pay in-lieu fees which are "deposited into the Affordable Housing Fund."  § 142.1306(d).  The in-lieu fees are currently assessed at $25.92 per square foot of proposed construction.  *Requirements for Inclusionary Affordable Housing*, The City of S.D., https://www.sandiego.gov/development-services/forms-publications/information-bulletins/532.[2]

---

[2] "Effective July 1, 2024, the Inclusionary In Lieu Fee shall be $25.00 per square foot of net building area of unrestricted market-rate residential development.  The Inclusionary In Lieu Fee shall be updated annually based on the annual increase in the Construction Costs Index (CCI) published by Engineering News Record for Los Angeles . . . ."  S.D., Cal., Municipal Code § 142.1306(a).

There are three categories of exemptions from IAHR requirements:

(1) Residential development located in the North City Future Urbanizing Area that is within Proposition A Lands of the City of San Diego or any project located in an area of the City that was previously located in the North City Future Urbanizing Area;

(2) Rehabilitation of an existing building that does not result in a net increase of dwelling units on the premises; and

(3) Density bonus units if the development meets the minimum thresholds set by California Government Code §§ 65915–65918.

§ 142.1303(a)–(c). The City may also approve a "variance, waiver, adjustment, or reduction" on two grounds. § 142.1311. First, the City may grant a modification if the decision maker makes all of the following findings:

(1) Special circumstances, unique to that development, justify granting the variance, waiver, adjustment, or reduction;

(2) The development would not be feasible without the modification;

(3) A specific and substantial financial hardship would occur if the variance, waiver, adjustment, or reduction were not granted; and

(4) No alternative means of compliance are available which would be more effective in attaining the purposes of this Division than the relief requested.

§ 142.1311(a). Second, the City can grant a modification if it "makes *findings* that applying the requirements of [the IAHR] would take property in violation of the United States or California Constitutions." § 142.1311(b).

**B. Plaintiffs and the Kearney Mesa Project**

Plaintiffs in this case are residential property developers: (1) Palmer Kearney Mesa Properties, L.P., a California limited partnership doing business in San Diego County, and (2) GH Palmer, Inc., a California corporation doing business across California including in San Diego County (collectively, "Plaintiffs" or "Palmer"). (SAC ¶¶ 13–14). Palmer is engaged in residential property development across San Diego County and California. (*Id.* ¶ 15). Relevant here, Palmer seeks to build a large mixed-use development consisting of 1,642 residential units and approximately 32,000 square feet of retail space ("Project") located at Clairemont Mesa Boulevard, Convoy Street, and Raytheon Road, within the City

3

of San Diego. (*Id.* ¶¶ 16–17). The property is in an area zoned for the kind of multi-family residential development this Project proposes and accordingly, "no further quasi-legislative or discretionary City approvals are required, and the Project is considered as a by-right proposal, subject only to further ministerial review by City Staff." (*Id.* ¶ 16).

In December 2022, Palmer alleges it submitted a detailed plan to the City for review as part of its application for building permits. (*Id.* ¶ 86). The application indicated the Project should be "exempt from" the IAHR's requirement of setting aside 10% of newly constructed units as affordable units or payment of in-lieu fees but also indicated that "in the absence of any other feasible alternative or opportunity to object," Palmer would comply with the IAHR by payment of "in-lieu fees." (*Id.*). On June 6, 2023, the City's preliminary review of the Project "did not grant Plaintiffs' request for exemption" and indicated the Project would be "subject to 'the inclusionary affordable housing fee per [section] 142.1306.'" (*Id.* ¶ 87). Palmer wrote to the City seeking clarification on its failure to acknowledge the request for an exemption. (*Id.* ¶ 88). On August 11, 2023, the City responded in writing asking Palmer why it believed the Project qualified for an exemption. (*Id.* ¶ 89). In the email, the City identified three types of exemptions, none of which applied to the Project. (*Id.* ¶¶ 89–90). Palmer believed any further pursuit of administrative relief would be futile and did not respond further about an IAHR exemption. (*Id.* ¶¶ 90, 94).

### C. Claims and Procedural History

On September 22, 2023, Palmer filed a Complaint raising five claims for relief under the U.S. Constitution, California Constitution, and various state laws.[3] (ECF No. 1). On March 4, 2024, the City filed a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. (ECF No. 13). After briefing and a hearing on May 17, 2024,

---

[3] The Mayor and City Council of the City of San Diego were named as defendants in the initial, first amended, and second amended complaints, but each time were dismissed without prejudice pursuant to a joint motion. (*See* ECF Nos. 10, 25, 48).

the Court took the motion under submission. (*See* ECF Nos. 14, 15, 18). On August 22, 2024, the Court granted the City's motion.[4] (Mot. to Dismiss Order ("MTD Order"), ECF No. 20). Palmer thereafter filed a First Amended Complaint ("FAC"). (ECF No. 21). On October 29, 2024, the Court granted a joint motion to stay the case while the City Council considered Palmer's IAHR waiver application. (ECF No. 27). On April 10, 2025, Palmer moved for relief from the order staying the case, reconsideration of the motion to dismiss order, leave to amend the complaint, and injunctive relief directing the City to "unbundle" Palmer's IAHR waiver application from its other ministerial permit applications. (ECF No. 30). The City responded in opposition and Palmer replied. (ECF Nos. 37, 38). On May 23, 2025, the Court lifted the stay, found reconsideration of the motion to dismiss order to be unnecessary given the amended complaint, granted leave to amend, and denied injunctive relief. (ECF No. 41). On June 13, 2025, Palmer filed its SAC. On July 10, 2025, Palmer filed a Motion for a Preliminary Injunction, which the Court later denied.[5] (ECF Nos. 49, 60). On July 14, 2025, the City filed the Motion to Dismiss currently before the Court. (Mot., ECF No. 52). After full briefing, the Court vacated the hearing, finding the matter suitable for decision without oral argument. (ECF No. 62). The Parties filed supplemental authority on September 23, November 6, and November 14, 2025. (ECF Nos. 61, 65, 67).

Palmer's SAC asserts four claims. First, that the IAHR constitutes a taking in

---

[4] The Court dismissed Palmer's as-applied constitutional law claims as unripe until there was a final determination from the City. (MTD Order 10–21). Palmer's facial due process and equal protection claims were dismissed on the merits. (*Id.* at 22–25). The Proposition 26 claim was dismissed with prejudice after the Court found that amendment would be futile. (*Id.* at 25–26). Palmer's claim that the City unconstitutionally failed to justify the IAHR exactions was dismissed as having no legal basis, but the Court specified that the theory could be incorporated into the takings claims. (*Id.* at 26). The California Mitigation Fee Act ("CMFA") claim was dismissed with leave to amend since it depended on the IAHR fees being unlawful exactions. (*Id.* at 26–27). Finally, the Court dismissed the claim alleging the improper calculation of costs justifying IAHR exactions as having no legal basis but allowed the theory to be raised as part of the CMFA claim. (*Id.* at 27).

[5] Palmer moved for a preliminary injunction prohibiting the City from requesting additional engineering information, bundling the Building Permit Application with the IAHR Waiver application, and expiring the Building Permit Application. (ECF No. 49).

violation of the Fifth and Fourteenth Amendments of the U.S. Constitution, brought under 42 U.S.C. § 1983. (SAC ¶¶ 125–160). Second, that the IAHR constitutes a taking in violation of article I, section 19 of the California Constitution. (*Id.* ¶¶ 161–168). Third, that the IAHR violates the California Mitigation Fee Act ("CMFA"). (*Id.* ¶¶ 169–175). Fourth, for the "Wrongful and Arbitrary Imposition of Unjustified Demands for Extraneous Discretionary Approvals and Unjustified Threats to Expire Plaintiffs' Valid and Complete Building Permit Application." (*Id.* ¶¶ 176–182). Palmer's takings claims are brought both facially and as-applied under a per se physical taking theory and a land-use exaction theory. (*Id.* ¶¶ 128–160, 163–164).

The City now moves to dismiss all of the claims asserted in the SAC. As to the first and second claims, the City argues that Palmer failed to allege sufficient factual matter to state facial takings claims. (Mot. 23–24). Even if facial takings claims were properly alleged, the City argues the claims are time-barred and further, cannot be based on a *Nollan/Dolan* exactions theory. (*Id.* at 24); *see Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825 (1987); *Dolan v. City of Tigard*, 512 U.S. 374, 377 (1994). The City argues that Palmer's as-applied takings claims are still unripe because they do not meet the finality requirement or California's administrative exhaustion requirement. (Mot. 17–19). Finally, the City asserts that all of the takings claims should be dismissed because Palmer seeks equitable relief when monetary damages are available, the IAHR does not effect a physical taking, and the IAHR's requirements are not unlawful exactions. (*Id.* at 22–23, 26–40). As to the third claim, the City argues that the IAHR's in-lieu fees are not "fees" within the meaning of the CMFA and thus not subject to its requirements. (*Id.* at 40–41). As to the fourth claim, the City argues there is no legal basis for the claim and thus no entitlement to equitable relief. (*Id.* at 41–42).

## II.    LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to

federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). The court will then evaluate whether the complaint alleges "sufficient factual matter, accepted as true" to invoke federal court jurisdiction. *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (applying the *Iqbal* standard to a 12(b)(1) jurisdictional challenge).

In a factual challenge, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. Unlike with a facial attack, the court need not accept the allegations in the complaint as true. *Id.* Instead, "the plaintiff must support [their] jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation modified). Thus, the plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence and to prevail, "must furnish affidavits or other evidence necessary to satisfy [their] burden." *Safe Air*, 373 F.3d at 1039 (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)); *see Leite*, 749 F.3d at 1121.

Here, the City converted its Rule 12(b)(1) motion "into a factual motion by presenting affidavits or other evidence" attached to the motion. *Safe Air*, 373 F.3d at 1039 (quoting *Savage*, 343 F.3d at 1039 n.2); (*see* Decl. of Lee H. Roistacher, ECF No. 52-2; Decl. of Travis Cleveland ("Cleveland Decl."), ECF No. 52-3). In response, Palmer presented an affidavit and exhibits of its own. (Decl. of Geoff Palmer, ECF No. 56-1); *see supra* note 10. The Court may now "resolve [the] factual disputes itself." *Leite*, 749 F.3d at 1121–22 (noting an exception when jurisdictional and merits questions are intertwined).

Palmer will prevail if it can show by a preponderance of the evidence that this Court has subject-matter jurisdiction.  *See id.* at 1121.

### B. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  If the plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Id.* at 570.

### III.    DISCUSSION

### A. Takings Claims

In the SAC, Palmer alleges that the IAHR's requirements amount to an uncompensated taking in violation of the U.S. Constitution and California Constitution.

(SAC ¶¶ 125–168).  The Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits "private property be[ing] taken for public use, without just compensation."  U.S. Const. amend. V; *Tyler v. Hennepin County*, 598 U.S. 631, 637 (2023).  Article I, section 19 of the California Constitution similarly provides that "Private property may be taken or damaged for a public use . . . only when just compensation . . . has first been paid." Cal. Const. art. I, § 19.  As these provisions are generally construed congruently, the Court analyzes them together.  *See Cote v. Off. of Cal. State Controller*, No. 23-15375, 2024 WL 1108546, at *1 (9th Cir. Mar. 14, 2024) (citing *San Remo Hotel L.P. v. City and County of San Francisco*, 41 P.3d 87, 100–01 (Cal. 2002)); *Lafayette Bollinger Dev. LLC v. Town of Moraga*, 311 Cal. Rptr. 3d 273, 295 n.10 (Cal. Ct. App. 2023) ("The federal and California constitutional provisions are construed 'congruently,' except with regard to a difference in scope that is not relevant here.").  As noted, Palmer alleges its takings claims both facially and as-applied.  (SAC ¶¶ 128–160, 163).  Facial takings challenges assert "that the mere enactment of a statute constitutes a taking." *Ventura Mobilehome Cmtys. Owners Ass'n v. City of San Buenaventura*, 371 F.3d 1046, 1051 (9th Cir. 2004) (quoting *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 686 (9th Cir. 1993)).  As-applied takings challenges allege "that the particular impact of a government action on a specific piece of property requires the payment of just compensation."  *Id.*  The Court first addresses the City's arguments concerning Palmer's facial takings claims.

1.  Facial Takings Claims

a.  *Sufficient Factual Matter*

The City argues that Palmer failed to allege sufficient facts to support its facial challenges. (Mot. 23–24).  Although this Court previously interpreted Palmer's Complaint as raising only as-applied takings claims, the FAC explicitly alleged facial challenges. (MTD Order 9; *see* ECF No. 21-1).  Palmer now alleges that the IAHR is unconstitutional "in all or at least the great majority of cases wherein the property is or may be subjected to [it]." (SAC ¶¶ 140, 159).  This satisfies the pleading standard that plaintiffs must "plausibly

allege that 'no set of circumstances exists under which' the IAHR may validly apply." (MTD Order 9 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987))). Accordingly, the Court finds that Palmer has adequately alleged facial claims.

### b. Time-Bar

The City argues that any facial takings claims are nevertheless time-barred. (Mot. 24–26). The statute of limitations for federal claims brought under 42 U.S.C. § 1983 is that of the forum state's statute of limitations for personal injury actions. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th Cir. 2019). Thus, the statute of limitations for Palmer's federal takings claim is two years. *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011) (citing Cal. Civ. Proc. Code § 335.1 (West 2025)). The statute of limitations for a facial takings claim under the California Constitution is ninety days. *616 Croft Ave., LLC v. City of West Hollywood*, 207 Cal. Rptr. 3d 729, 735 (Cal. Ct. App. 2016) (citing Cal. Gov't Code § 65009(c)(1) (West 2025)). For facial takings challenges, the limitations period begins to run when the ordinance is enacted. *Colony Cove*, 640 F.3d at 956; *Hensler v. City of Glendale*, 876 P.2d 1043, 1056 (Cal. 1994); *see County of Sonoma v. Superior Ct.*, 118 Cal. Rptr. 3d 915, 928–29 (Cal. Ct. App. 2010) (distinguishing *Travis v. County of Santa Cruz*, 94 P.3d 538 (Cal. 2004)). This is because "[i]n other contexts, the harm inflicted by the statute is continuing, or does not occur until the statute is enforced," whereas a facial takings challenge alleges "that the very enactment of the statute has reduced the value of the property or has effected a transfer of a property interest." *Levald*, 998 F.2d at 688. The question here is when Palmer's facial challenge began to accrue.

The City argues that the challenged requirements were already in place by July 1, 2020, at the latest, when the IAHR was amended by ordinance O-21167. (Mot. 25–26). Palmer, on the other hand, contends that the increase of in-lieu fees in July 2023 and 2024

restarted the limitations period.[6]  (Opp'n 29–31).  However, amending a statute typically does not restart a limitations period unless there is a substantive amendment which "alter[s] the effect of the ordinance upon the plaintiff[]."  *Colony Cove*, 640 F.3d at 957 (quoting *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007)); *see Arcadia Dev. Co. v. City of Morgan Hill*, 86 Cal. Rptr. 3d 598, 610 (Cal. Ct. App. 2008) (assessing whether the reenactment of a ten-year ordinance was a "substantive change").[7]

---

[6] Palmer alleges that "the City amended the IAHR in July 2023, . . . and again in July 2024, to amend and increase the exactions demanded."  (Opp'n 30; SAC ¶¶ 78–79).  It appears, however, that the fee amounts through 2024 were already established by the 2020 amendments to the IAHR.  (*See* ECF No. 13-3 at 67–68; SAC ¶ 77).  It is doubtful whether this type of phased implementation constitutes the type of "amendment" relevant to the accrual of limitations periods.  Nevertheless, because statute of limitations challenges are evaluated under a Rule 12(b)(6) standard requiring courts to accept the complaint's factual allegations as true, and because the City does not appear to contest Palmer's characterization, the Court assumes for purposes of this analysis that the fee changes constitute amendments.  *See Saeedy v. Regents of Univ. of Cal.*, No. 22-55667, 2023 WL 4422300, at *1 (9th Cir. July 10, 2023); (Reply 9–10).  Palmer also contends that the City's Request for Judicial Notice reflects "several more recent amendments to the IAHR," but does not brief the issue or identify any specific post-2020 amendment that altered the regulatory requirements it challenges.  (Opp'n 30 (citing SAC ¶ 132); *see* Mot. 11–12 (describing amendments to methods of compliance, Coastal Zone applicability, and other ancillary provisions)).  Without more, this amounts to a conclusory assertion that the Court need not accept as true.  *See in re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055.  The Court therefore limits its accrual analysis to the July 2023 and July 2024 fee changes.

[7] Palmer cites *Barratt* for the proposition that fee increases restart the statute of limitations clock.  (Opp'n 30–31); *Barratt Am. Inc. v. City of Rancho Cucamonga*, 124 P.3d 719, 728 (Cal. 2005).  However, *Barratt* was interpreting the CMFA, which explicitly provides a limitations period for challenging an ordinance "modifying or amending an existing fee."  Cal. Gov't Code § 66022 (West 2025).  As *Barratt* examined the "local agency's statutory duties . . . . especially in light of the facts [of the] case," courts have declined to extend it beyond a CMFA context.  *Barratt*, 124 P.3d at 728; *see City of Gridley v. Superior Ct.*, 325 Cal. Rptr. 3d 641, 648 (Cal. Ct. App. 2024).  Instead, the proper test is that applied in *Arcadia*: whether the plaintiff "is challenging a new plan" which constitutes a "substantive change."  86 Cal. Rptr. 3d at 609, 610.  Although *Arcadia* discusses the reasoning of *Barratt* in doing its own analysis, it does so within the context of the CMFA's language and statutory scheme.  *Arcadia*, 86 Cal. Rptr. 3d at 605–06.  Here, unlike in *Arcadia* and *Barratt*, the changes made to the in-lieu fees reflect previously scheduled annual updates, rather than an extension of the duration of a regulation.  Furthermore, time-barring Palmer's claim is consistent with the express purpose of the ninety-day limit in section 65009, which seeks to "provide certainty for property owners and local governments" and reduce the "chilling effect" of delayed litigation.  Cal. Gov't Code § 65009 (West 2025).

Here, the amendments were annual updates to the in-lieu fees already required by the regulatory scheme. *See* § 142.1306(a). Palmer's facial challenge, by contrast, is to the core mechanism of the IAHR: the set-aside requirement or in-lieu fee alternative, along with the recording requirement. (SAC ¶¶ 134, 138, 143, 150, 163, 164). A facial takings challenge, by definition, alleges "that the very enactment of the statute" resulted in "a single harm, measurable and compensable when the statute [was] passed." *Levald*, 998 F.2d at 688. If the IAHR regulatory scheme itself constituted such a harm, as Palmer alleges, then it was on notice no later than 2020. The annual in-lieu fee increases did not alter the fundamental structure of the IAHR or its effect on developers like Palmer. Therefore, the annual fee updates are not substantive amendments that restart the statute of limitations for facial challenges. As July 1, 2020 was the latest possible accrual date, Palmer's federal and California facial takings claims became time-barred on July 1, 2022 and September 29, 2020, respectively. Palmer filed its original complaint on September 22, 2023, so "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *see also Int'l Engine Parts, Inc. v. Feddersen & Co.*, 888 P.2d 1279, 1282 (Cal. 1995) (where "the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law"). Accordingly, Palmer's facial takings claims are **dismissed with prejudice** as untimely.[8] The Court now turns to Palmer's as-applied takings claims.

### 2. As-Applied Takings Claims

#### a. Ripeness

The City argues that Palmer's as-applied takings claims remain unripe because the City Council has not yet ruled on Palmer's waiver application. (Mot. 17–19). Palmer responds that the finality requirement does not apply to the types of claims now alleged in the SAC, making the claims ripe. (Opp'n 15–21). Palmer further argues that the City's

---

[8] In light of this determination, the Court declines to address the City's assertion that *Nollan/Dolan* claims cannot be brought facially.

actions and prolonged delays have demonstrated the futility of seeking administrative relief. (*Id.* at 21–23).

Article III of the U.S. Constitution limits federal courts to deciding cases or controversies. U.S. Const. art. III, § 2. Implicit in this limitation is the ripeness requirement that a case must "present concrete legal issues" to prevent courts from "entangling themselves in abstract disagreements." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009) (citation modified). The Court's previous order in this case dismissed Palmer's as-applied takings claims as unripe. (MTD Order 10–22). The Court concluded that the claims did not meet the finality requirement because the City had not reached a conclusive determination and there remained avenues available for the City to clarify or change its position. (*Id.* at 11). In the time since that Order, several things have changed. Palmer has since pursued administrative relief in the form of a waiver application that was deemed complete on October 29, 2024. (Cleveland Decl. ¶ 9). City staff completed review of the application and notified Palmer that they "would make a recommendation of denial to the Planning Commission, and that the Commission, in turn, would recommend that the City Council deny the request." (*Id.* ¶ 10). Palmer also filed its FAC before the case was stayed for almost seven months. (*See* ECF Nos. 21, 27, 41). Palmer then filed its SAC alleging fewer claims and theories than in the original complaint. (SAC; *see also* FAC).

The City argues that Palmer has failed to meet the finality requirement reaffirmed in *Pakdel*. (Mot. 17 (citing *Pakdel v. City and County of San Francisco*, 594 U.S. 474, 475, 480 (2021)); *see* MTD Order 10–19). However, this ignores the fact that Palmer has abandoned its regulatory theory and now proceeds solely under physical taking and land-use exaction theories. (SAC ¶¶ 128–160, 163–164; *see* FAC at 26 n.4). This change is dispositive. The *Williamson County* finality requirement, affirmed in *Pakdel*, "applies only

23-cv-01755-DMS-BJW

to regulatory, not per se, takings."[9] *Fowler v. Guerin*, 899 F.3d 1112, 1117 (9th Cir. 2018); *Williamson*, 473 U.S. 172, *overruled by*, *Knick*, 588 U.S. 180. Accordingly, there is no longer a finality requirement and the relevant question is simply whether there is a ripe case or controversy within the meaning of Article III.[10]

---

[9] *Williamson County* "established two distinct requirements for taking claims under the rubric of ripeness." *Dodd v. Hood River County*, 59 F.3d 852, 858 (9th Cir. 1995). First, the government must have "reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Second, "the owner [must have] unsuccessfully attempted to obtain just compensation through the procedures provided by the State." *Id.* at 195. Prior to the overruling of *Williamson County*, the Ninth Circuit consistently held that the first requirement only applied to regulatory takings claims. *See Fowler v. Guerin*, 899 F.3d 1112, 1117 (9th Cir. 2018); *Vacation Vill., Inc. v. Clark County*, 497 F.3d 902, 912 (9th Cir. 2007); *Daniel v. County of Santa Barbara*, 288 F.3d 375, 382 (9th Cir. 2002). In 2019, *Knick* overruled *Williamson County*'s second prong, finding that property owners were "not required to seek and be denied compensation in state court before bringing a federal claim." *Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1148 (9th Cir. 2022) (citing *Knick v. Township of Scott*, 588 U.S. 180 (2019)). In 2021, *Pakdel* clarified the finality requirement standard, but in doing so confirmed that it only applies "[w]hen a plaintiff alleges a *regulatory taking* in violation of the Fifth Amendment." *Pakdel*, 594 U.S. at 475, 479 (emphasis added) ("Because a plaintiff who asserts a *regulatory taking* must prove that the government regulation has gone too far, the court must first know how far the regulation goes." (citation modified) (emphasis added)). This limitation has been confirmed in the language of post-*Pakdel* Ninth Circuit decisions. *See Garza v. Woods*, 150 F.4th 1118, 1125 (9th Cir. 2025); *Mendelson v. San Mateo County*, No. 23-15494, 2024 WL 3518319, at *1 (9th Cir. July 24, 2024); *Patel v. City of South El Monte*, No. 21-55546, 2022 WL 738625, at *2 (9th Cir. Mar. 11, 2022); *Ralston v. County of San Mateo*, No. 21-16489, 2022 WL 16570800, at *1 (9th Cir. Nov. 1, 2022). The factors that a court must examine in a regulatory taking case, like economic impact and interference with reasonable investment-backed expectations, "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson Cnty.*, 473 U.S. at 191; *see Pa. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). However, this reasoning does not apply to physical takings or land-use exaction claims, which do not turn on whether a regulation has gone "too far" but instead allege a per se taking. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 614 (2013) (contrasting the ad hoc, factual inquiry of regulatory takings with the per se approach for land-use exactions); *Newberg Crestview, LLC v. City of Newberg*, No. 3:22-cv-1289-AR, 2023 WL 8372167, at *5 (D. Or. Dec. 4, 2023).

[10] Palmer argues that the 12(b)(1) standard should not be applied in this case because "the specific ripeness requirements applicable to land use disputes are not jurisdictional." (Opp'n 12–13.) As the Court finds that the finality requirement does not apply to the claims at issue, it need not resolve this question. *See Fowler*, 899 F.3d at 1116 n.1 (noting the Supreme Court has not "resolve[d] the continuing vitality of the prudential ripeness doctrine"). The Court also does not reach Palmer's arguments regarding de facto finality, futility, or the ripeness standard for declaratory relief claims. (*See* Opp'n 20–23.)

Constitutional ripeness "is synonymous with the injury-in-fact prong of the standing inquiry." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). Therefore, "an injury must involve an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citation modified). The City has made it clear that the IAHR applies to Palmer's project, whether or not the waiver application is granted. (*See* SAC ¶ 87). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation modified). The Parties' dispute over whether the IAHR effects an unconstitutional taking or violates state law presents a concrete legal controversy that is far from "imaginary or wholly speculative." *Id.* at 160 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)). Accordingly, Palmer's as-applied taking claims are ripe.

### b. Exhaustion

California imposes an additional requirement for Palmer's state law claims. Unlike federal claims, "the rule of exhaustion of administrative remedies is well established in California jurisprudence." *Campbell v. Regents of Univ. of Cal.*, 106 P.3d 976, 982 (Cal. 2005); *see Knick*, 588 U.S. at 185 ("The settled rule is that exhaustion of state remedies is not a prerequisite to an action under 42 U.S.C. § 1983." (citation modified)). The rule requires that "where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Abelleira v. Dist. Ct. of Appeal*, 109 P.2d 942, 949 (Cal. 1941). However, there are a number of "flexible" exceptions. *Campbell*, 106 P.3d at 983. As noted in *McAllister v. County of Monterey*, 54 Cal. Rptr. 3d 116, 129–30 (Cal. Ct. App. 2007), exceptions:

> are commonly recognized when the administrative remedy is unavailable, when it is inadequate, or when it would be futile to pursue it. Other exceptions include situations where the agency indulges in unreasonable delay, when the subject matter lies outside the administrative agency's jurisdiction, or when pursuit of an administrative remedy would result in irreparable harm. To this list must be added exceptions where important questions of constitutional law or public policy governing agency authority are tendered.

15

*Id.* (citation modified).  Several of these exceptions may apply here—including futility and questions of constitutional law—but the unreasonable delay exception is most apparent.[11]

The City argues that Palmer has not exhausted administrative remedies because there has been no final decision from City Council.  (Mot. 17–19).  However, the circumstances have changed significantly since this Court's prior order dismissing Palmer's claims. (MTD Order 20–21).  At that time, Palmer had not pursued a modification under section 142.1311(b).  (*Id.*).  Palmer has now done so.  (SAC ¶ 29).  Palmer's waiver application was deemed complete on October 29, 2024.  (Cleveland Decl. ¶ 9).  Furthermore, on January 30, 2025, City staff sent a letter notifying Palmer that a Planning Commission hearing would likely take place in the spring with a City Council hearing to follow in the summer.  (ECF No. 52-6 at 1–3).  To the Court's knowledge, neither hearing has occurred. More than fourteen months have now passed without the City scheduling a hearing before the final decision maker.  (Cleveland Decl. ¶ 9).  Requiring Palmer to wait indefinitely would not serve the purposes underlying the exhaustion doctrine.  *See McAllister*, 54 Cal. Rptr. 3d at 129–30; *City of San Jose v. Operating Eng'rs Loc. Union No. 3*, 232 P.3d 701, 708 (Cal. 2010) (exhaustion "does not apply when the administrative procedure is too slow to be effective").  Accordingly, the Court concludes that Palmer has satisfied California's exhaustion requirement and proceeds to the merits of the as-applied takings claims.

### c.  Physical Taking

Palmer alleges that the IAHR effects a per se physical taking by requiring developers to set aside a percentage of units for occupancy by low-income tenants at below-market rents, or alternatively, to pay in-lieu fees.  (SAC ¶¶ 128–137, 163).  According to Palmer, this requirement appropriates its property rights by forcing it to accept uninvited occupants and surrender control over rental rates.  (Opp'n 24–25).  The City argues that Palmer's physical takings claims fail as a matter of law because the IAHR does not compel any

---

[11] As the Court ultimately concludes that Palmer's as-applied takings claims fail on the merits, the exhaustion question is not dispositive.

physical occupation of its property but merely regulates voluntary entry into the rental housing market.  (Mot. 26–35).

As noted, the Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V; *Tyler*, 598 U.S. at 637.  Similarly, the California Constitution specifies that "Private property may be taken or damaged for a public use . . . only when just compensation . . . has first been paid." Cal. Const. art. I, § 19; *see Lafayette*, 311 Cal. Rptr. 3d at 295 n.10.  A per se physical taking occurs when "the government physically acquires private property for a public use." *Pharm. Rsch. & Mfrs. of Am. v. Stolfi*, 153 F.4th 795, 833 (9th Cir. 2025) (citation modified).  This occurs whenever the government "authorizes [a] compelled physical invasion," which can be anything from "flood[ing] a landowner's property" to "requir[ing] the landowner to suffer the installation of a cable." *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992).

The threshold question is whether the government *required* the property owner to submit to occupation or merely regulated the owner's use of their own property.  *See Yee*, 503 U.S. at 527.  "This element of required acquiescence is at the heart of the concept of occupation." *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987).  The critical distinction is between an invitee and "an interloper with a government license." *Id.* at 252–53.  In the housing context, "it is the invitation, not the rent, that makes the difference." *Id.* at 252.  By voluntarily entering the rental market, a property owner extends that invitation, and the government may then regulate the terms of the relationship without creating a physical invasion.  *See Yee*, 503 U.S. at 527–28 (1992).  Palmer relies on *Cedar Point*, in which the Supreme Court noted "the right to exclude is one of the most treasured rights of property ownership." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 149 (2021) (citation modified).  But *Cedar Point* itself recognized that regulations compelling an invasion and those regulating how a property owner treats invitees are "readily distinguishable." *Id.* at 157; *see 74 Pinehurst LLC v. New York*, 59 F.4th 557, 563 (2d Cir. 2023) (distinguishing *Cedar Point* in the context of rent control).  Indeed, the Supreme Court "has consistently affirmed

that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails." *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 440 (1982). "The government may place ceilings on the rents the landowner can charge or require the landowner to accept tenants he does not like without automatically having to pay compensation." *Yee*, 503 U.S. at 529 (citation modified). Accordingly, laws "regulating the economic relations of landlords and tenants are not *per se* takings." *Fla. Power*, 480 U.S. at 252.

Applying this framework, the IAHR does not effect a physical taking. Palmer retains the choice of whether to develop its property, build residential housing, and enter the rental market. *See 74 Pinehurst*, 59 F.4th at 564 (no one forced plaintiffs "to place their properties into the regulated housing market"). If Palmer does choose to develop rental housing of ten or more units, the IAHR requires that either ten percent be made available to low- or very-low-income households at restricted rents, or that Palmer pay in-lieu fees.[12] *See* §§ 142.1302–1305. This regulatory structure is consistent with those that courts have upheld against physical takings challenges. In *Yee*, the Supreme Court rejected a physical takings claim where the owners "voluntarily rented their land to mobile home owners" and were not compelled to continue to do so. 503 U.S. at 527–28. The Court found that the "tenants were invited . . . not forced upon [the owners] by the government." *Id.* at 528. Courts have applied this reasoning to uphold a variety of landlord-tenant regulations against physical takings challenges.[13] So too here. If Palmer proceeds with the Project, any tenants,

---

[12] Palmer invokes a footnote from *Loretto* for the proposition that "a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation." (Opp'n 25; SAC ¶ 133 (quoting *Loretto*, 458 U.S. at 439 n.17)). However, *Yee* addressed and rejected this precise argument, finding the point inapplicable when "the ordinance does not effect a physical taking in the first place." *Yee*, 503 U.S. at 532.

[13] *See, e.g.*, *Ballinger v. City of Oakland*, 24 F.4th 1287, 1293 (9th Cir. 2022) (relocation fee "merely regulates . . . the relationship between landlord and tenant." (citation modified)); *Hotop v. City of San Jose*, 982 F.3d 710, 716 (9th Cir. 2020) (rent control ordinance "does not work any type of per se taking");

23-cv-01755-DMS-BJW

including those occupying affordable units, will be lessees invited by Palmer, not interlopers imposed by the City.[14]  Unlike the union organizers in *Cedar Point*—strangers granted access by government regulation—tenants under the IAHR enter through the normal voluntary landlord-tenant relationship.  The IAHR "merely regulate[s] [Palmer's] use of [the] land by regulating the relationship between landlord and tenant." *Yee*, 503 U.S. at 528.  Therefore, Palmer's as-applied takings claims brought under a physical taking theory fail as a matter of law.

### d.  Land-Use Exaction

Palmer also brings its as-applied takings claims under an unconstitutional conditions theory.  (SAC ¶¶ 141–149, 164).  Palmer contends that the IAHR constitutes an unlawful exaction because it conditions permit approval on either setting aside ten percent of rental units as affordable housing, secured for fifty-five years, or paying substantial in-lieu fees. *Id.*  Palmer argues these conditions lack the nexus and proportionality required by the *Nollan/Dolan* line of cases.  *Id.*  The City responds that the IAHR is not an exaction at all

---

*Bols v. Newsom*, No. 22-56006, 2024 WL 208141, at *1–2 (9th Cir. Jan. 19, 2024) (commercial eviction moratorium not a physical taking where tenants voluntarily invited); *El Papel, LLC v. City of Seattle*, No. 22-35656, 2023 WL 7040314, at *2 (9th Cir. Oct. 26, 2023) ("The Landlords here chose to use their property as residential rentals."); *1210 Cacique St., LLC v. City of Santa Barbara*, No. CV 23-8152 PA (RAOx), 2024 WL 1600323, at *5 (C.D. Cal. Mar. 1, 2024) (rent control not a physical taking); *Williams v. Alameda County*, 642 F. Supp. 3d 1001, 1016 (N.D. Cal. 2022) ("The Ninth Circuit has held consistently that laws governing the landlord-tenant relationship are not subject to a categorical per se takings analysis."); *Pakdel v. City and County of San Francisco*, 636 F. Supp. 3d 1065, 1074 (N.D. Cal. 2022) (lifetime lease requirement not a physical taking where plaintiffs "voluntarily rent out their property"); *Farhoud v. Brown*, No. 3:20-cv-2226-JR, 2022 WL 326092, at *10 (D. Or. Feb. 3, 2022) (contrasting *Cedar Point* with eviction moratorium at issue); *S. Cal. Rental Hous. Ass'n v. County of San Diego*, 550 F. Supp. 3d 853, 866 (S.D. Cal. 2021) (no physical taking where "landowners [] invited the renters to inhabit their rental units, make them their homes, and abide by the rental agreements").

[14] Palmer argues that the IAHR still infringes on its right to exclude by forcing it to accept low-income tenants it would not otherwise choose.  (SAC ¶ 132).  The Supreme Court rejected this exact reasoning in *Yee*, finding just because "they voluntarily open their property to occupation by others, petitioners cannot assert a per se right to compensation based on their inability to *exclude particular individuals*." *Yee*, 503 U.S. at 531 (first citing *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 259, 261 (1964); and then citing *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 82–84 (1980)).

because it would not be a compensable taking if imposed outside of the permitting process. (Mot. 35–40).

The unconstitutional conditions doctrine "provides that the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government where the benefit has little or no relationship to the property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 547 (2005). The *Nollan/Dolan* theory "involve[s] a special application of this doctrine that protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits. *Koontz*, 570 U.S. at 604 (citation modified); *Nollan*, 483 U.S. 825; *Dolan*, 512 U.S. 374. *Nollan* held that permit conditions demanding a conveyance of property must have an "essential nexus" to the government's land-use interest. 483 U.S. at 837. *Dolan* added the requirement that permit conditions have "rough proportionality" to the development's impact on the land-use interest. 512 U.S. at 391. In *Koontz*, the Supreme Court extended this framework to monetary exactions. 570 U.S. at 612. In *Sheetz*, the Supreme Court clarified that these requirements apply to administrative *and* legislative permit conditions. *Sheetz v. County of El Dorado*, 601 U.S. 267, 280 (2024).

However, *Nollan/Dolan* scrutiny does not apply to every permit condition. "A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz*, 570 U.S. at 612. "In the takings context, *Nollan/Dolan* scrutiny therefore applies only when the condition at issue would have been a compensable taking if imposed outside the permitting process." *Sheetz*, 601 U.S. at 281 (Sotomayor, J., concurring); *see also Koontz*, 570 U.S. at 612 ("[W]e began our analysis in both *Nollan* and *Dolan* by observing that if the government had directly seized the easements it sought to obtain through the permitting process, it would have committed a per se taking."). The California Supreme Court applied this principle in *CBIA*, holding that an inclusionary housing ordinance requiring developers to sell a percentage of units at affordable prices

did not constitute an exaction triggering *Nollan/Dolan* scrutiny. *Cal. Bldg. Indus. Ass'n v. City of San Jose* ("*CBIA*"), 351 P.3d 974, 990 (Cal. 2015). The court explained:

> Nothing in *Koontz* suggests that the unconstitutional conditions doctrine under *Nollan* and *Dolan* would apply where the government simply restricts the use of property without demanding the conveyance of some identifiable protected property interest (a dedication of property or the payment of money) as a condition of approval. It is the governmental requirement that the property owner convey some identifiable property interest that constitutes a so-called "exaction" under the takings clause and that brings the unconstitutional conditions doctrine into play.

*Id.*[15] The ordinance at issue in *CBIA* did "not require the developer to dedicate any portion of its property to the public or to pay any money to the public. Instead, like many other land use regulations, [the] condition simply place[d] a restriction on the way the developer [could] use its property." *Id.* at 991. The court concluded that the ordinance was not an exaction because it fell "within what we have already described as municipalities' general broad discretion to regulate the use of real property to serve the legitimate interests of the general public and the community at large."[16] *Id.* The Ninth Circuit follows the same

---

[15] Palmer argues that post-*Sheetz*, courts must apply *Nollan/Dolan* scrutiny to legislative permit conditions like the IAHR. (Opp'n 26 (citing *Sheetz*, 601 U.S. at 280)). This is mistaken. *Sheetz* addressed *which* governmental bodies have permit conditions subject to *Nollan/Dolan* scrutiny, not *what* qualifies as an exaction, as confirmed in Justice Sotomayor's concurrence. *Sheetz*, 601 U.S. at 281 (Sotomayor, J., concurring). Therefore, *Sheetz* did not disturb *CBIA*'s reasoning that where there was no physical taking, in the case of an inclusionary housing ordinance, there could not be an exaction. *See Sheetz v. County of El Dorado*, 335 Cal. Rptr. 3d 316, 330 (Cal. Ct. App. 2025) (unpublished) (citing *CBIA*, 351 P.3d at 989–90) ("We begin our analysis by addressing the threshold or antecedent question Justice Sotomayor identified in her concurring opinion in this case."); *Benedetti v. County of Marin*, 336 Cal. Rptr. 3d 571, 579 (Cal. Ct. App. 2025) (applying *Nollan/Dolan* post-*Sheetz* and citing *CBIA* for the proposition that "there can be no valid unconstitutional-conditions takings claim without a government exaction of property").

[16] Palmer attempts to distinguish *CBIA* on the grounds that it involved for-sale housing, as opposed to rental housing. (Opp'n 32–33). This distinction is immaterial. *CBIA*'s holding turned on the nature of the regulatory requirement, not the type of housing involved, as evidenced by both its language and its invocation of *Yee*. *CBIA*, 351 P.3d at 991 (citing *Yee*, 503 U.S. at 532). Nor does the IAHR's recording requirement transform the regulation into an exaction. Palmer contends that *CBIA* is distinguishable because the restrictions at issue there operated on future purchasers, whereas here, developers retain ownership and bear the ongoing burden directly. (Opp'n 32–33). But *CBIA*'s conclusion was categorical:

approach.  In *Ballinger*, the court emphasized that "the starting point to our analysis of exactions claims is still whether the substance of the condition . . . would be a taking independent of the conditioned benefit."  *Ballinger v. City of Oakland*, 24 F.4th 1287, 1300 (9th Cir. 2022).  Ultimately, "whatever the government action is, it must condition the grant of a benefit on an unconstitutional taking."  *Id.* at 1299.

Here, Palmer contends that the set-aside requirement and in-lieu fees do not pass *Nollan/Dolan* scrutiny and are thus unconstitutional.  (SAC ¶¶ 141–149, 164).  Yet, as discussed, the threshold question is whether the IAHR effects a taking at all.  For the reasons discussed in the previous section, the Court concludes it does not.  The IAHR, like the ordinance in *CBIA*, regulates the use of property rather than appropriates it.  The set-aside requirement does not compel Palmer to give the property to the public, it merely regulates the terms on which it can rent certain units.  *See CBIA*, 351 P.3d at 991 ("[T]his condition simply places a restriction on the way the developer may use its property by limiting the price for which the developer may offer some of its units for sale.").  The in-lieu fee option further undermines Palmer's argument because courts have found it to be "particularly inappropriate" to find a per se taking where "waivers, alternate compliance methods, and cost-offsetting provisions are available."  *Alto Eldorado P'ship v. County of Santa Fe*, 634 F.3d 1170, 1178 n.4 (10th Cir. 2011); *see CBIA*, 351 P.3d at 1002.  As the IAHR would not constitute a taking if imposed outside of the permit process, *Nollan/Dolan* scrutiny does not apply.  Therefore, Palmer's as-applied takings claims under the U.S. and California Constitutions fail as a matter of law and are **dismissed with prejudice**.[17]

---

recording "does not transform these [affordability] requirements into property interests possessed by the city.  Recordation simply assures that would-be purchasers of the affordable units are on notice regarding the restrictions relating to resale and is no different from the routine recording of other types of land use restrictions that are intended to continue for a specified period of time." *CBIA*, 351 P.3d at 996.

[17] The Court does not reach the City's argument that Palmer's takings claims improperly seek equitable relief when monetary damages are available.  (Mot. 22–23).

**B. CMFA Claim**

Palmer's third claim alleges that the IAHR violates the CMFA. Cal. Gov't Code §§ 66000–66006 (West 2025); (SAC ¶¶ 173–175). Specifically, Palmer contends that the City failed to make the required findings, demonstrate a reasonable relationship between the in-lieu fees and the development's impact, identify the public facilities funded by the fees, and adopt a nexus study. (SAC ¶ 173). Palmer also invokes section 66001(g) which prohibits certain fees from including "the costs attributable to existing deficiencies in public facilities." *Id.* The City argues that the CMFA does not apply because the in-lieu fees are not "fees" within the meaning of the Act. (Mot. 40–41).

The CMFA "creates uniform procedures for local agencies to follow in establishing, imposing, collecting, accounting for, and using development fees." *Walker v. City of San Clemente*, 192 Cal. Rptr. 3d 635, 640 (Cal. Ct. App. 2015). The Act defines a fee as:

> a monetary exaction other than a tax or special assessment, whether established for a broad class of projects by legislation of general applicability or imposed on a specific project on an ad hoc basis, that is charged by a local agency to the applicant in connection with approval of a development project *for the purpose of defraying all or a portion of the cost of public facilities related to the development project*

§ 66000(b) (emphasis added). "'Public facilities' includes public improvements, public services, and community amenities." § 66000(d). The threshold question is therefore whether a fee is imposed for the purpose of defraying the cost of public facilities. If the fee in question does not fall under this definition, then it is not subject to the CMFA.

Palmer argues the CMFA applies because the in-lieu fees here fall under the broad "scope of fees and exactions imposed by local governments in connection with approval of development projects." (SAC ¶ 173). However, California courts have squarely held that affordable housing in-lieu fees are not fees within the meaning of the CMFA.[18] In *616*

---

[18] Palmer cites *Hamilton* and *Walker* in support of its argument that in-lieu fees fall within the scope of the CMFA. (Opp'n 34). However, this reliance is misplaced. In *Hamilton*, the court held that parking

23

*Croft*, an appeals court considered an ordinance which, like here, required developers to rent or sell a portion of their newly constructed units at below-market rates or pay in-lieu fees to fund affordable housing. 207 Cal. Rptr. 3d at 733. Relying on a California Supreme Court decision, the court held that affordable housing in-lieu fees do not fall under the CMFA because their purpose "is not to defray the cost of increased demand on public services resulting from [the] specific development project, but rather to combat the overall lack of affordable housing." *Id.* at 736 (citing *CBIA*, 351 P.3d at 979). The court in *Cherk* reached the same conclusion. *Cherk*, 2018 WL 6583442, at *7 ("[A]n in-lieu housing fee is not an exaction subject to the Act when the fee's purpose is not to mitigate the adverse impact of the particular development but is instead to enhance the public welfare by promoting the use of available land for the development of affordable housing.").[19]

The reasoning of *616 Croft* and *Cherk* applies with equal force here.[20] The IAHR's stated purpose is to "encourage diverse and balanced neighborhoods with housing available

---

in-lieu fees were subject to the CMFA specifically *because* they were "directed at mitigating a particular adverse effect of the development proposal under consideration." *Hamilton & High, LLC v. City of Palo Alto*, 306 Cal. Rptr. 3d 154, 173 (Cal. Ct. App. 2023) (citation modified). Critically, the court cited to *616 Croft* and found its reading of the Act consistent with theirs. *Id.* at 173 (citing *616 Croft*, 207 Cal. Rptr. 3d 729). Similarly, *Walker* involved fees to "defray the cost of acquiring and constructing new beach parking facilities" as an impact of the new development. 192 Cal. Rptr. 3d at 638. These cases are therefore unpersuasive. *See Cherk v. County of Marin*, No. A153579, 2018 WL 6583442, at *7 (Cal. Ct. App. Dec. 14, 2018) (unpublished) (distinguishing *Sterling Park, L.P. v. City of Palo Alto*, 310 P.3d 925 (Cal. 2013)).

[19] "Though we have sometimes been willing to rely in part on unpublished decisions as evidence supporting a particular reading of California law in limited instances, we are also sensitive to the concern that unpublished decisions of the California Courts of Appeal may not be cited as authority in state court, Cal. R. Ct. 8.1115(a)–(b)." *Li v. ArcSoft, Inc.*, 160 F.4th 1063, 1066 (9th Cir. 2025) (citation omitted).

[20] "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132, 1136 (9th Cir. 2024) (quoting *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)). Here, *616 Croft*'s holding is consistent with *CBIA*'s reasoning that inclusionary housing requirements serve "broad general welfare purposes" and there is no reason to think the highest court would decide differently here. *616 Croft*, 207 Cal. Rptr. 3d at 738; *CBIA*, 351 P.3d at 1000 ("Like other zoning or land use regulations that are intended to shape and enhance the character and quality of life of the community as a whole, San Jose's inclusionary housing ordinance is intended to advance purposes

24

for households of all income levels" and "ensure that when developing the limited supply of developable land, housing opportunities for persons of all income levels are provided." § 142.1301.  This is precisely the type of broad public welfare purpose identified in *616 Croft* and *Cherk*.  The IAHR in-lieu fees are not imposed to defray the cost of public facilities impacted by the Project but to "enhance the public welfare by promoting the use of available land for the development of housing that would be available to low- and moderate-income households."  *616 Croft*, 207 Cal. Rptr. 3d at 736.  Accordingly, the IAHR's in-lieu fees are not "fees" within the meaning of the CMFA.  Accordingly, this claim is **dismissed with prejudice**.

### C. Unjustified Demands Claim

Palmer seeks declaratory and injunctive relief for the "Wrongful and Arbitrary Imposition of Unjustified Demands for Extraneous Discretionary Approvals and Unjustified Threats to Expire Plaintiffs' Valid and Complete Building Permit Application." (SAC ¶¶ 176–182).  Specifically, Palmer alleges the City is improperly demanding newly raised administrative submissions, bundling unrelated applications, subjecting the Project to new discretionary administrative reviews, and threatening to expire Palmer's building permit application.  *Id.*  The City moves to dismiss on the grounds that Palmer does not identify a legal basis for the claim.  (Mot. 41–43).

"A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010) (citation modified).  However, before that test is reached, the plaintiff must establish an underlying legal claim.  *Fierro v. Cap. One, N.A.*, 620 F. Supp. 3d 1105, 1112–13 (S.D. Cal. 2022) ("Indeed, declaratory and injunctive relief are not independent claims, rather they are forms of relief." (citation modified)).  Palmer's fourth claim does not identify a regulation, statute, or constitutional provision that the City violates.  In the briefing, Palmer

---

beyond mitigating the impacts or effects that are attributable to a particular development or project and instead to produce a widespread public benefit." (citation modified)).

invokes *Perry v. Sindermann* for the proposition that the government may not retaliate against a person for exercising constitutional rights.  408 U.S. 593, 594 (1972); (Opp'n 34–35).  However, that analysis involved a First Amendment retaliation claim, which Palmer does not allege here.  Moreover, the Court previously denied Palmer's request for a preliminary injunction which sought substantially the same relief.  (ECF No. 60).  As this claim has no legal basis, amendment would be futile and it is **dismissed with prejudice**.[21]

## IV.    CONCLUSION AND ORDER

For the reasons set out above, the Court **GRANTS** the City's Motion to Dismiss. The case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated:  January 16, 2026

Hon. Dana M. Sabraw
United States District Judge

---

[21] The Court is mindful that leave to amend should be given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a).  However, courts may deny leave in the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  As discussed in this Order, Plaintiffs' claims "lack[] a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  Therefore, "because Plaintiffs have not shown that any new factual allegations could alter these conclusions based on settled precedent, amendment would be futile."  *Parents for Priv. v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020).

23-cv-01755-DMS-BJW